IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

KDH ELECTRONIC SYSTEMS, INC.
200 Federal Street
Camden, New Jersey, and

KDH DEFENSE SYSTEMS, INC.
401 Broad Street
Johnstown, Pennsylvania 15906

                Plaintiffs,

    v.

CURTIS TECHNOLOGY (UK) LTD
Jubilee Enterprise Centre
Weymouth, Dorset DT4 7BS
United Kingdom,

THOMAS E. CURTIS
17 Field Barn Dv.
Weymouth, Dorset  DT4 0ED
United Kingdom, and

MICHAEL J. CURTIS
137 Faversham
Weymouth, Dorset DT4 9SL
United Kingdom

            Defendants.

CIVIL ACTION NO. 08-CV-2201

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that Plaintiffs KDH Electronic Systems, Inc. and KDH

Defense Systems, Inc. move pursuant to Fed. R. Civ. P. 28(b)(1)(A) and pursuant to Articles 1,

3, 17 and 18 of the Hague Convention of the Taking of Evidence Abroad in Civil or Commercial

Matters for the Execution of Letters of Request for the depositions of representatives of and

production of documents by Wavefront Systems Limited, a company located at Coldharbour

Business Park, Sherborne, Dorset, DT9 4JW, United Kingdom and Oceanscan Limited, a

company located at Denmore Road, Aberdeen AB23 8JW, Scotland, United Kingdom.

Respectfully submitted,

/s/J. Bradford McIlvain
J. Bradford McIlvain
Natalie D'Amora
**DILWORTH PAXSON LLP**
1500 Market Street
Suite 3500E
Philadelphia, PA 19102

Date: November 13,  2009

*Counsel for KDH Electronic Systems, Inc. and
KDH Defense Systems, Inc.*

822402_1

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

KDH ELECTRONIC SYSTEMS, INC.
200 Federal Street
Camden, New Jersey, and

KDH DEFENSE SYSTEMS, INC.
401 Broad Street
Johnstown, Pennsylvania 15906

                              Plaintiffs,

            v.

CURTIS TECHNOLOGY (UK) LTD
Jubilee Enterprise Centre
Weymouth, Dorset DT4 7BS
United Kingdom,

THOMAS E. CURTIS
17 Field Barn Dv.
Weymouth, Dorset  DT4 0ED
United Kingdom, and

MICHAEL J. CURTIS
137 Faversham
Weymouth, Dorset DT4 9SL
United Kingdom

                              Defendants.

CIVIL ACTION NO. 08-CV-2201

## **MOTION**

Plaintiffs KDH Electronic Systems, Inc. and KDH Defense Systems, Inc. move pursuant to Fed. R. Civ. P. 28(b)(1)(A) and pursuant to Articles 1, 3, 17 and 18 of the Hague Convention of the Taking of Evidence Abroad in Civil or Commercial Matters for the Execution of Letters of Request for the depositions of representatives of and production of documents by Wavefront Systems Limited, a company located at Coldharbour Business Park, Sherborne, Dorset, DT9

822402_1

4JW, United Kingdom and Oceanscan Limited, a company located at Denmore Road, Aberdeen

AB23 8JW, Scotland, United Kingdom.

Respectfully submitted,


/s/J. Bradford McIlvain
J. Bradford McIlvain
Natalie D'Amora
**DILWORTH PAXSON LLP**
1500 Market Street
Suite 3500E
Philadelphia, PA 19102

Date: November 13,  2009                    *Counsel for KDH Electronic Systems, Inc. and*
                                            *KDH Defense Systems, Inc.*

, ,

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

KDH ELECTRONIC SYSTEMS, INC.
200 Federal Street
Camden, New Jersey, and

KDH DEFENSE SYSTEMS, INC.
401 Broad Street
Johnstown, Pennsylvania 15906

                                    Plaintiffs,

                    v.                                    CIVIL ACTION NO. 08-CV-2201

CURTIS TECHNOLOGY (UK) LTD
Jubilee Enterprise Centre
Weymouth, Dorset DT4 7BS
United Kingdom,

THOMAS E. CURTIS
17 Field Barn Dv.
Weymouth, Dorset  DT4 0ED
United Kingdom, and

MICHAEL J. CURTIS
137 Faversham
Weymouth, Dorset DT4 9SL
United Kingdom

                    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
## EXECUTION OF LETTERS OF REQUEST

Plaintiffs KDH Electronic Systems, Inc. and KDH Defense Systems, Inc. (collectively

"**KDH**") hereby submit this Memorandum of Law in support of their Motion for Execution of

Letters of Request pursuant to Federal Rule of Civil Procedure 28(b)(1)(A) and Articles 1, 3, 17

822402_1

and 18 of the Hague Convention of the Taking of Evidence Abroad in Civil or Commercial Matters ("**Hague**").

## I.      PRELIMINARY STATEMENT

This case involves the breach of a joint development agreement for the design, marketing, and selling of a swimmer detection sonar system, known as the T-3 System. KDH contracted with Defendants Curtis Technology Limited, Thomas Curtis and Michael Curtis (collectively "**Curtis**") to provide sonar engineering to assist in the development of the T-3 System pursuant to contracts KDH had entered into with the United States Navy. Pursuant to the parties' agreements, the T-3 System and all related intellectual property is solely owned by KDH, and Curtis may not compete with KDH in the marketplace or disclose confidential information regarding the T-3 System to third parties.

The affidavit of David Herbener, already filed with the Court in support of KDH's Motion for Preliminary Injunction, provides the following facts:

1. Curtis has been paid for his subcontracting work and reimbursed fully for all material in conjunction with the development of the T-3 System. To date, Curtis has been paid $816,101.12 for the work he has performed on the T-3 System.

2. Curtis has engaged in the following actions which are contrary to the anti-competition provisions of the Teaming Agreement and violate the confidentiality clause of the Teaming Agreement:

   a. In January of 2008, KDH became aware that Curtis had discussions and entered into a non-disclosure agreement regarding the T-3 System, with Wavefront Systems Ltd. ("**Wavefront**"), which was recently purchased by KDH's competitor, Sonardyne Group Ltd. ("**Sonardyne**");

   b. In December of 2006, KDH became aware that Curtis was testing the T-3 System at facilities owned by Oceanscan Ltd. ("**Oceanscan**"), a competitor of KDH, despite the fact that Curtis had previously represented

that testing was taking place at BinCleaves, in the vicinity of Weymouth, UK;

    c.  In August of 2006, KDH became aware that Curtis was attempting to enter into agreements to provide a sonar signaling process system to Oceanscan, a competitor of KDH.  The provision of such systems to competitors of KDH is barred by the Teaming Agreement.  Though KDH attempted in good faith to reach an agreement with both Oceanscan and Curtis regarding the provision of such a system, no such agreement was reached.  Thereafter, in January of 2007, KDH learned that Curtis had entered into approximately ten purchase orders with Oceanscan for the sale of underwater sonar detection systems, in direct contravention of the terms of the Teaming Agreement;

    d.  As a result of Curtis' breaches of contract and unfair competition, KDH has and will continue to sustain injuries to its reputation and ability to do business with its customers; and

    e.  In particular, Curtis' disclosure of trade secrets has placed KDH at a competitive disadvantage, and has adversely impacted the marketability and patentability of the T-3 System.  Curtis' attempts to assert ownership over the T-3 System and to compete for customers with KDH has deprived KDH of its rightful use of, and ability to market, the T-3 System.

In order to ascertain the extent to which Curtis has violated the Teaming Agreement through his dealings with Oceanscan and Wavefront, and in order to assess the extent of damages caused thereby, KDH respectfully requests that the Court execute the attached Letters of Request, attached hereto as Exhibit "A."

**II.**    **FACTUAL HISTORY**

    **A.**    **Teaming Agreement to Develop the T-3 System**

Plaintiffs KDH design, manufacture, and supply military equipment, radar systems, naval maintenance systems and force protection systems.  Defendants Curtis are in the business of sonar engineering.  Since 2005, KDH has enlisted the consulting services of Curtis to assist in

the development of a swimmer detection sonar system, under contracts from the United States Navy.

On or about August 23, 2005, KDH and Curtis entered into an initial Consulting Agreement regarding the development of the T-3 System (the "**Consulting Agreement**").   A copy of the Consulting Agreement is attached hereto as Exhibit "B."   In relevant part, the Consulting Agreement provided that Curtis, as independent consultant, would provide sonar engineering services for the T-3 System in order to accomplish the tasks set forth in the scope of work in KDH's contracts with the United States Navy for the development of the T-3 System. *See generally* Ex. B.  Curtis was paid for his time, material and expenses on a monthly basis through individual purchase orders and invoices.

Thereafter, on or about April 5, 2006, KDH and Curtis entered into the Teaming Agreement for the purpose of the development of the T-3 System designed by KDH.  Pursuant to the Teaming Agreement, KDH is responsible for preparing proposals to obtain funding for the development of the T-3 System, and for sales and marketing of the T-3 System to potential customers.  *See* Teaming Agreement, ¶¶ 2, 5.   A true and correct copy of the Teaming Agreement is attached hereto as Exhibit "C."   Further, Curtis is responsible for sonar engineering, including research, design and development, for the T-3 System. *Id.*, ¶ 1, p. 13 ¶ 2.

After entering into the Teaming Agreement, KDH and Curtis agreed that the parties would submit purchase orders and invoices for the work to be performed by Curtis as a subcontractor.  Curtis has been paid for his subcontracting work and reimbursed fully for all material in conjunction with the development of the T-3 System.  To date, Curtis has been paid $816,101.12 for the work he has performed on the T-3 System.  Copies of the purchase orders and invoices are attached hereto as Exhibit "D."

The Teaming Agreement sets forth the various intellectual property rights of the parties related to the T-3 System.  The Teaming Agreement provides that KDH is the sole owner and has the sole and exclusive right to use the T-3 System and all related technical developments and intellectual property rights.  Ex. C, ¶¶ 12, 13(e). The Teaming Agreement also provides that all developments related to the T-3 System are to be maintained in the strictest confidence (Ex. C, ¶ 7); prohibits the parties from consulting for any competitive business, (Ex. C, ¶ 8(a)); and prohibits Curtis from entering into any contracts with third-parties which would conflict with the obligations of Curtis in the Teaming Agreement (Ex. C, ¶ 8(e)).

### B.     The T-3 System Contracts and Curtis' Failure to Perform

Pursuant to its obligations under the terms of the Teaming Agreement, KDH entered into a series of contracts and subcontracts with the United States Navy for the development of the T-3 System.  These contracts were administered by a number of parties including a defense contractor, Coherent Systems International, the United States Air Force, and the United States Army (collectively the contracts will be referred to as "**T-3 System Contracts**").

The T-3 System Contracts include schedules and deadlines for the development and testing of the T-3 System.  The Teaming Agreement specifically anticipated that Curtis and KDH would work together to meet the obligations of the third-party customer contracts, including the obligations to meet the deadlines and milestones in the third-party contracts.  The Teaming Agreement stated that KDH would provide the project schedules from its third-party contracts to Curtis, and that Curtis would provide weekly status reports regarding scheduled milestones, and proposed recovery methods for any slipped tasks. Ex. C, p. 13 ¶ 3. Curtis has continually failed to meet the deadlines in the Teaming Agreement.

### C.   Curtis' Violations of the Anti-Competition and Confidentiality Provisions

In addition to failing to meet its engineering related obligations under the Teaming Agreement, Curtis has engaged in a variety of anticompetitive conduct in direct violation of the Teaming Agreement, including, as outlined above, disclosing confidential information to and entering into prohibited agreements with Oceanscan and Wavefront. Because both Oceanscan and Wavefront are non-party witnesses located in the United Kingdom, KDH respectfully requests that the Court execute the attached Letters of Request so that KDH may conduct depositions and obtain documents critical to its claims in the instant action.

### III.   ARGUMENT

### A.   Applicable Rules

Federal Rule of Civil Procedure 28(b)(1)(A) provides: "A deposition may be taken in a foreign country under an applicable treaty or convention." The Hague Convention of the Taking of Evidence Abroad in Civil or Commercial Matters, entered into force October 7, 1972 ("**Hague**"), provides the following relevant rules:

1.   In civil or commercial matters a judicial authority of a contracting state may, in accordance with the provisions of the law of that State, request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence, or to perform some other judicial act (Art. 1);

2.   A Letter of Request shall specify – (a) the authority requesting its execution and the authority requested to execute it, if known to the requesting authority; (b) the names and addresses of the parties to the proceedings and their representatives, if any; (c) the nature of the proceedings for which the evidence is required, giving all necessary information in regard thereto; (d) the evidence to be obtained or other judicial act to be performed. Where appropriate, the Letter shall specify, *inter alia* – (e) the names and addresses of the persons to be examined; (f) the questions to be put to the persons to be examined or a statement of the subject-matter about which they are to be examined; (g) the document or other property, real or personal, to be inspected; (h) any requirement that the evidence is to be given on oath or affirmation, and any special form to

be used; (i) any special method or procedure to be followed under Article 9 (Art. 3);

3.       In civil or commercial matters, a person duly appointed as a commissioner for the purpose may, without compulsion, take evidence in the territory of a Contracting State in aid of proceedings commenced in the courts of another Contracting State if – (a) a competent authority designated by the State where the evidence is to be taken has given its permission either generally or in a particular case; and (b) he complies with the conditions which the competent authority had specified in the permission (Art. 17); and

4.       A Contracting State may declare that a…commissioner authorized to take evidence under Articles 15, 16 or 17, may apply to the competent authority designated by the declaring State for appropriate assistance to obtain the evidence by compulsion…(Art. 18).

### B.    Standard

Hague procedures are available "whenever they will facilitate the gathering of evidence by the means authorized in the Convention." *Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522, 541 (1987). "The party seeking to pursue discovery through the Hague Evidence Convention bears the burden of demonstrating that proceeding in that manner is necessary and appropriate." *Metso Minerals Inc. v. Powerscreen Int'l Distribution Ltd.*, No. 06-1446, 2007 WL 1875560 at *2 (E.D.N.Y. June 25, 2007) (internal quotations omitted). "That burden is not great, however, since the Convention procedures are available whenever they will facilitate the gathering of evidence by the means authorized in the Convention." *Id.* (quoting *Tulip Cumputers Int'l B.V. v. Dell Computer Corp.*, 254 F.Supp.2d 469, 474 (D. Del. 2003). Finally, the terms of a letter of request must also be "necessary and appropriate." *Astrazeneca v. Ranbaxy Pharmaceuticals, Inc.*, No. 05-5553, 2008 WL 314627 at *3 (D.N.J. Jan. 28, 2008).

**C.    KDH's Letters of Request are an Available Means of Obtaining Evidence Authorized by Hague.**

KDH moves for execution of Letters of Request for the taking of depositions and for the production of documents in England and Scotland.   As delineated above, KDH's Letters of Request seek to utilize means of obtaining evidence taking expressly authorized by Hague. *See* Hague, Art. 1, 3, 17, 18.   Thus, KDH has carried its minimal burden of proving Hague's applicability.

**D.    Issuance of a Letter of Request is Necessary and Appropriate Because Wavefront and Oceanscan are Non-Party Witnesses Beyond the Jurisdiction of the Court.**

Hague is "the only mechanism by which a non-party witness located abroad may be compelled to testify." *Elliot Assocs., L.P. v. Peru*, No. 96 CIV 7917, 1997 WL 436493 at *2 (S.D.N.Y. Aug. 1, 1997).   Therefore, "[a]pplication for a letter of request to take testimony pursuant to the Hague Convention is an appropriate mechanism for obtaining discovery of a non-party witness in a foreign country." *Id.  See also Metso Minerals*, 2007 WL 1875560 at *3 (finding Hague procedures may be the "only" means by which a litigant can obtain discovery from non-party witness who is a citizen of a foreign country and is not subject to court's jurisdiction); *Tulip Computers*, 254 F.Supp.2d at 474 (granting issuance of letter of request to depose non-parties not subject to court's jurisdiction).   In determining whether to issue a letter of request, the Court should not weigh the evidence to be elicited by a deposition and may not determine whether the witness will be capable of giving the anticipated testimony. *Astrazeneca*, 2008 WL 314627 at *2.

In the instant matter, KDH seeks to depose representatives of and obtain documents from Wavefront and Oceanscan, non-party witnesses located beyond the Court's jurisdiction.   Thus,

Hague provides the *only* means of obtaining evidence from these foreign entities. Application of Hague procedures is therefore "necessary and appropriate."

       E.      **The Court Should Issue KDH's Letters of Request Because their Terms are Just and Appropriate.**

"Necessarily, a finding of the 'justness' of a particular request, and its 'appropriateness' under the specific set of circumstances, requires case-by-case review." *Astrazeneca*, 2008 WL 314627 at *3. Generally, however, courts consider whether the party seeking the letter of request has put its adversary on notice of its intent to obtain discovery from the individuals or entities named in the request. *Id.* Moreover, execution of a letter of request is appropriate where the terms of the request are tailored to obtain relevant evidence. *Id. See also Aerospatiale*, 482 U.S. at 545 (finding that requests must be reasonable and not abusive); *Metso Minerals*, 2007 WL 1875560 at *3 (issuing letter of request because, in part, requested testimony and documents were relevant to plaintiff's claims).

KDH requests discovery directly relevant to its breach of contract, Pennsylvania Uniform Trade Secrets Act, Unfair Competition and Conversion claims. In short, KDH seeks to determine to what extent Curtis disclosed information related to and/or sold the T-3 System or other systems based on the same proprietary technology to Wavefront and/or Oceanscan in violation of both the Consulting and Teeming Agreements. KDH has tailored its requests in that regard. Therefore, the terms of KDH's letter of request are just and appropriate, and the Court should execute the same.

IV.     **Conclusion**

For the foregoing reasons, KDH respectfully requests that the Court grant this Motion and: (1) execute the attached Letters of Request, and (2) return the executed Letters of Request to KDH for delivery to the appropriate competent authorities.

Respectfully submitted,

/s/ J. Bradford McIlvain
J. Bradford McIlvain
Natalie D'Amora
DILWORTH PAXSON LLP
1500 Market Street
Suite 3500E
Philadelphia, PA 19102

Date: November 13,  2009          *Counsel for KDH Electronic Systems, Inc. and*
                                  *KDH Defense Systems, Inc.*

, ,

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 13, 2009, the undersigned caused to be served a copy of the Plaintiffs KDH Electronic Systems, Inc. and KDH Defense Systems, Inc.'s Motion for Execution of Letters of Request via the Court's electronic filing system and first-class mail as follows:

David Kenna, Esquire
Mound Cotton Wollan & Greengrass
One Battery Park Plaza
New York, NY 1004-1486
DKenna@moundcotton.com

/s/ J. Bradford McIlvain

**THIS DOCUMENT HAS BEEN ELECTRONICALLY FILED AND IS AVAILABLE
FOR VIEWING AND DOWNLOADING FROM THE CM/ECF SYSTEM**

822402_1