IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


KDH ELECTRONIC SYSTEMS, INC.,  :     CIVIL ACTION
et al.                         :
                               :
        v.                     :
                               :
CURTIS TECHNOLOGY LTD.,        :
et al.                         :     NO. 08-2201


MEMORANDUM AND ORDER

McLaughlin, J.                              March 19, 2010

        This case involves a dispute over a contract between

plaintiffs KDH Electronics, Inc., and KDH Defense Systems, Inc.

(collectively, "KDH"), and the defendant Curtis Technology Ltd.

("CTL").  The other defendants, Dr. Thomas E. Curtis and Michael

L. Curtis, are directors of CTL.  The parties entered into a

Teaming Agreement (the "Agreement") in April of 2006.  The

Agreement outlines the roles played by each party in the design,

testing, and manufacture of a radar system known as the T-3

System.  Under the Agreement, the plaintiffs were responsible for

preparing funding proposals and marketing the T-3 System, and the

defendants assumed the role of technical researcher, designer and

developer.  The plaintiffs allege that the defendants breached

the Agreement and committed several torts in relation to that

breach.

        Thomas E. Curtis and Michael J. Curtis move to dismiss

the plaintiffs' claims for lack of personal jurisdiction.  In the

alternative, they move to dismiss the plaintiffs' breach of contract claims for failure to state a claim upon which relief may be granted. The plaintiffs argue that the defendants waived their personal jurisdiction defense by not asserting it sooner in the litigation. The plaintiffs also argue that the both Thomas and Michael Curtis have the minimum contacts with Pennsylvania necessary for jurisdiction and that the plaintiffs have adequately stated a claim for breach of contract against Thomas and Michael Curtis.

The Court grants the defendants' motion to dismiss for lack of personal jurisdiction as to defendant Michael Curtis. The Court, however, denies the motion as to defendant Thomas Curtis. The Court also denies the defendants' motion to dismiss the plaintiffs' breach of contract claim against Thomas Curtis without prejudice.

I.    Allegations of the Complaint

KDH Electronic Systems, Inc., and KDH Defense Systems, Inc., are contractors who design, manufacture and supply military equipment, radar systems, naval maintenance systems and force protection systems. CTL is in the business of sonar engineering. Both KDH Electronic Systems, Inc., and KDH Defense Systems, Inc., are Pennsylvania corporations. CTL is a United Kingdom limited

corporation, and Thomas and Michael Curtis are citizens of the United Kingdom.

KDH enlisted the defendants' consulting services to assist in the development of the T-3 System, a swimmer detection sonar system. Their relationship was formalized in several agreements. The last of these was the Agreement, which the parties executed for the purposes of developing the T-3 System. See Compl., Ex. B. The Agreement provided, among other things, that all developments related to the T-3 System were to be maintained in the strictest confidence. It also prohibited the parties from consulting for, financing, owning, or managing any competitive business and prohibited the defendants from entering into any contracts with third-parties that would conflict with their obligations under the Agreement.

The complaint alleges that the defendants failed to meet their obligations under the Agreement, including refusing to provide information to KDH when requested, failing to deliver and test the T-3 System on a number of occasions, and failing to meet critical deadlines. The complaint also alleges that the defendants attempted to undermine the Agreement by filing a patent in the United Kingdom asserting the defendants' ownership over the T-3 System. It also alleges that the defendants violated the Agreement's confidentiality clause and restrictive covenants by providing information to KDH's competitors about the

T-3 System and by soliciting contracts from customers and competitors of KDH for the sale of the T-3 System.

The complaint brings claims of breach of contract, common law unfair competition, conversion, and violations of the Pennsylvania Uniform Trade Secrets Act.  As relief, the complaint requests a preliminary injunction, specific performance and damages.

## II.  Jurisdictional Facts

The Court finds the following undisputed facts, as presented in the affidavits of Thomas Curtis and Michael Curtis and the affidavit of KDH's president, Dave Herbener.

Thomas Curtis is a director of CTL, and Michael Curtis is a director and employee of CTL.  CTL was approached by a representative of KDH in February of 2005 to discuss the development of an underwater swimmer detection system.  Mr. Herbener and Thomas Curtis then developed a relationship through phone conversations in which they discussed the market and technology behind developing such a swimmer detection system. After forming confidentiality and consulting agreements with KDH, Thomas and Michael Curtis traveled to Norfolk, Virginia, in December of 2005 to participate in a meeting to discuss the proposed system with KDH and various military and Department of Defense attendants.  This trip was both Thomas and Michael

Curtis's first and only visit to the United States, and neither defendant has ever visited Pennsylvania.

KDH and CTL entered into the Agreement for the purpose of developing and manufacturing the T-3 System on or about April 5, 2006. The Agreement provided that the United States District Court, Eastern District of Pennsylvania, has jurisdiction over any disputes arising out of the Agreement.[1] Thomas Curtis signed the Agreement with KDH on March 28, 2006, in his capacity as a director of CTL only. Michael Curtis was not involved in negotiations for the Agreement and was not aware of the existence of the Agreement until January 2007. From the formation of the Agreement through May 2008, Thomas Curtis directed telephone calls, letters, emails and faxes to Mr. Herbener at KDH's corporate headquarters in Pennsylvania.

Mr. Herberner's affidavit also contains allegations about Thomas and Michael Curtis's participation in the alleged breach of the Agreement that are not based upon Mr. Herbener's personal knowledge. The Court treats these allegations in the same manner as it would treat allegations in a complaint.

Specifically, Mr. Herbener states the he "became aware" that Thomas Curtis had committed the following violations of the

---

[1] The defendants state that, for the purposes of their motion, there is no dispute that CTL is subject to the jurisdiction of the Court because it has consented to such jurisdiction in the Agreement. CTL does not admit to jurisdiction on any other basis. See Defs' Br. at 4 n.2.

Agreement's restrictive covenants: (1) that Thomas Curtis was storing the T-3 prototype at facilities owned by a KDH competitor; (2) that Thomas Curtis approached a representative of the United States Navy and requested that he work directly with CTL on the T-3 Systems; (3) that Thomas Curtis was having discussions with a member of the United Kingdom Navy regarding the T-3 System; (4) that Thomas Curtis had entered into a non-disclosure agreement regarding the T-3 system with one of KDH's competitors; (5) that Thomas Curtis tested the T-3 System at facilities owned by one of KDH's competitors; (6) that Thomas Curtis was attempting and eventually did enter into agreements to provide a sonar signaling process system to one of KDH's competitors; and (7) that Thomas Curtis had filed a U.K. patent application for the T-3 System, naming only himself as owner and inventor. Herbener Decl. at ¶ 11(a)-(g). Mr. Herbener also makes the blanket allegation that, "[u]pon information and belief, Michael Curtis was also involved in such actions." Id.

## III. Analysis

Because it presents a threshold issue, the Court will first decide the defendants' motion to dismiss for lack of personal jurisdiction. Because the Court finds that it has personal jurisdiction over Thomas Curtis, the Court then

considers the defendant's motion to dismiss the plaintiffs' breach of contract claims against him alone.

A.    Personal Jurisdiction

The Court begins by addressing the plaintiffs' argument that the defendants waived their right to raise a personal jurisdiction objection.  Finding that the defendants have not waived their defense, the Court then evaluates the merits of the defendants jurisdictional arguments.  The Court concludes that the plaintiffs have alleged the minimum contacts necessary to establish jurisdiction in this forum for Thomas Curtis only.

1.    Waiver

Before analyzing the plaintiffs' waiver argument, the Court must first recount the procedural history relevant to this issue.  KDH filed its complaint and a motion for a preliminary injunction in May of 2008.  In two letters, dated July 24 and July 30, 2008, respectively,[2] the defendants asserted that Thomas

---

[2]    In the July 24 letter, the defendants stated that "the only proper parties to these proceedings are the parties to the Teaming Agreement namely KDH Electronics, Inc and Curtis Technology (UK) Ltd and requests that all other parties be dismissed immediately by the court of its own motion."  See Defs' Letter of July 24, 2008, § VI(3).  In the July 30 letter, the defendants reiterated their assertion that, because Thomas and Michael Curtis are not parties to the Agreement, they "should not therefore be parties to [the] proceedings and should be dismissed."  See Defs' Letter of July 30, 2008, at 2.

and Michael Curtis were not proper parties in this case because they were not parties to the Agreement.  No formal motion to dismiss Thomas Curtis or Michael Curtis was made.

The parties entered into two consent orders in June and August of 2008, whereby the defendants were ordered to turn over to KDH possession of the T-3 System prototype and certain other materials relating to the T-3 System.  Throughout the fall of 2008, the parties disputed whether the defendants had delivered the T-3 System's software source code in a manner sufficient to comply with the consent orders.

An evidentiary hearing was held on September 26, 2008, to determine the sufficiency of the defendants' compliance with the consent orders and to address the ultimate ownership of the T-3 software source code.  In a brief submitted before the hearing, the defendants again stated that, because Thomas Curtis and Michael Curtis are not parties to the Agreement, all claims against them should be dismissed.  See Defendants' Memorandum of Law in Opposition to Plaintiffs' Ownership of the Entire, Original T-3 System Source Code at 1 n.1.  At the hearing, Thomas Curtis was present via telephone and testified.  Michael Curtis was also present by telephone but did not speak.

The defendants answered the plaintiffs' complaint on October 29, 2008.  In their answer, they asserted as an affirmative defense that the Court lacks personal jurisdiction

over Thomas and Michael Curtis.  This was the first and only time that they raised their personal jurisdiction defense before filing this motion.

The Court issued a Memorandum and Order on December 23, 2008, declaring that KDH owns the T-3 System's software source code, ordering the defendants to provide all of the source code for the T-3 System to KDH and finding that the defendants violated the parties' June 2008 consent order.[3]  The defendants conveyed a disk containing the source code to KDH on March 9, 2009.  Both parties continued to submit letters to the Court on various outstanding issues related to the consent orders throughout the summer of 2009.  From August 2009 to October 2009, the parties engaged in settlement discussions with a magistrate judge.

The defendants filed their motion to dismiss on November 25, 2009.  In opposition to the motion, the plaintiffs argue that the defendants waived their right to a personal jurisdiction defense by moving to dismiss over one year after asserting that defense in their answer and after participating in the litigation for approximately one-and-a-half years.

---

[3]     After additional briefing on whether certain federal regulations impacted KDH's ownership interest in the defendants' preexisting software, the Court issued another Order on March 3, 2009, holding that KDH's ownership interest was not impacted by these regulations.

Personal jurisdiction is a right that may be waived. See Bel-Ray Co. v. Chemrite (Pty) Ltd., 181 F.3d 435, 443 (3d Cir. 1999) (quoting Insurance Corp. of Ireland, Ltd. v. Compagnie de Bauxites de Guinee, 456 U.S. 694, 703 (1982)). A personal jurisdiction defense may be "lost by failure to assert [it] seasonably, by formal submission in a cause, or by submission by conduct." Neirbo Co. v. Bethlehem Shipbuilders Corp., 308 U.S. 165, 167-68 (1939). "A party is deemed to have consented to personal jurisdiction if the party actually litigates the underlying merits or demonstrates a willingness to engage in extensive litigation in the forum." In re. Tex. Eastern Transmission Corp., 15 F.3d 1230, 1236 (3d Cir. 1994).

Whether a party has waived personal jurisdiction is decided on a case-by-case basis. See Wyrough & Loser, Inc. v. Pelmor Labs, Inc., 376 F.2d 543, 547 (3d Cir. 1967). In its analysis, a court should weigh two countervailing policies. The first is that the court should not place parties "in a procedural strait jacket by requiring them to possibly forego valid defenses by hurried and premature pleading." Id. The second is that the parties should conserve judicial time and effort and, therefore, should raise and dispose of preliminary matters like personal jurisdiction "before the court considers the merits or quasimerits of a controversy." Id.

Two cases from the United States Court of Appeals for
the Third Circuit are instructive as to the circumstances
constituting a waiver of personal jurisdiction.  The first case,
Wyrough, involved an action to enjoin and recover damages for the
misappropriation of trade secrets.  The defendant participated in
a three-day hearing on the plaintiff's request for an injunction
pendente lite before filing a motion to dismiss several weeks
later.  Although the hearing was held just one week after the
complaint was served on the defendant, the Court of Appeals
concluded that the defendant had waived his personal jurisdiction
defense.  The Court of Appeals reasoned that a party who
participates in a "vital proceeding" such as a hearing on an
injunction pendente lite "must be deemed to have waived the
defense of lack of personal jurisdiction."  Wyrough, 376 F.2d at
547.

The second case, Bel-Ray, involved a suit to compel the
defendants to arbitrate claims of unfair competition, fraud and
misappropriation.  Although the individual defendants timely
raised their personal jurisdiction defense in their answer, they
filed motions for summary judgment on a counterclaim raised in
the answer.  They later raised their personal jurisdiction
defense on appeal from the district court's decision granting
summary judgment for the plaintiffs.  The Court of Appeals held
that, because the defendants sought affirmative relief from the

district court and because there was nothing in the record suggesting that it would be unfair to hold that the defendants submitted themselves to the district court's jurisdiction, the individual defendants had waived their defense. <u>Bel-Ray</u>, 181 F.3d at 443.

The facts in this case are unlike those presented in <u>Wybrough</u> and <u>Bel-Ray</u>. No time or effort was wasted in determining CTL and KDH's rights and responsibilities under the consent orders before the issue of personal jurisdiction was addressed. Unlike <u>Wybrough</u>, where a single defendant litigated the "merits or quasimerits" of the claims against him before requesting that the court dismiss the entire case for lack of personal jurisdiction, the plaintiffs' claims against CTL will remain before the Court regardless of whether Thomas Curtis or Michael Curtis is present as a defendant. Nor is this case like <u>Bel-Ray</u>, where the defendants sought affirmative relief from the court before asserting their defense. The individual defendants have sought no affirmative relief from the Court.

In addition, no interest would have been served by forcing the defendants to move earlier. The dispute over the consent orders and the delivery of the T-3 Source Code was between KDH and CTL only. This case would not have been litigated any differently had the defendants moved for dismissal

before the dispute was resolved.[4]  Nor were the plaintiffs

prejudiced by waiting until the issue was resolved before the

defendants formally moved on their personal jurisdiction defense.


### 2.  Legal Standard for Personal Jurisdiction

Analyzing whether a court has personal jurisdiction

over a party is a two-step inquiry.  Pennzoil Prod. Co. v.

Colelli & Assocs., Inc., 149 F.3d 197, 200 (3d Cir. 1998); see

also Budget Blinds, Inc. v. White, 536 F.3d 244, 260 (3d Cir.

2008).  A court first must look to see if the exercise of

personal jurisdiction is authorized by the applicable state law.

If so, the court then considers whether exercising jurisdiction

comports with the due process requirements of the United States

Constitution.  Id.  In certain instances, the applicable state

law may provide for the exercise of jurisdiction up to the limits

of constitutional due process, thus collapsing the two steps into

one.  See, e.g., Pennzoil, 149 F.3d at 200; Miller Yacht Sales,

Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).

---

[4]     That both individual defendants were present at the
evidentiary hearing or that Thomas Curtis testified at the
hearing does not affect the Court's analysis.  The individual
defendants, as directors of CTL, might very well have been
present and testified at the evidentiary hearing even if they
were not individual defendants in the matter.

Personal jurisdiction is comprised of two categories: general jurisdiction and specific jurisdiction. Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 300 (3d Cir. 2008); O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007). The Court does not address the issue of general jurisdiction because the plaintiffs do not argue that it exists in this case. Specific jurisdiction exists when the claim at issue "arises from or relates to conduct purposely directed at the forum state." Kehm Oil, 537 F.3d at 300. For due process purposes, the central inquiry under specific jurisdiction is whether the defendant has purposefully directed his activities at the forum, whether the claim arises out of or relates to those activities, and whether the assertion of jurisdiction comports with fair play and substantial justice. O'Connor, 496 F.3d at 317.

The statutory basis for the exercise of specific jurisdiction in this case is provided in Pennsylvania's long arm statute, 42 Pa. C.S. § 5322. The statute authorizes personal jurisdiction over persons outside of Pennsylvania "to the fullest extent allowed under the Constitution of the United States" and "based on the most minimum contact" with Pennsylvania allowed under the Constitution. § 5322(b); see also Kehm Oil, 537 F.3d 299-300. The statute's reach, therefore, is coextensive with the limits of constitutional due process, and "[a] district court's exercise of personal jurisdiction pursuant to Pennsylvania's

14

long-arm statute is therefore valid as long as it is constitutional." Pennzoil, 149 F.3d at 200. The Court's inquiry is solely whether the exercise of personal jurisdiction over the defendants complies with due process. Id.

Determining whether the exercise of specific jurisdiction complies with constitutional due process is usually a three part inquiry. O'Connor, 496 F.3d at 317. First, the defendant must have purposefully availed itself of the privilege of conducting activities in the forum. O'Connor, 496 F.3d at 317. This requires that the defendant directed its activities at the forum such that the defendant can be said to have deliberately targeted it. Id. This requirement cannot be satisfied by the "unilateral activity" of someone other than the defendant. World-wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980). The defendant's conduct and connection with the forum state must be such "that he should reasonably anticipate being haled into court there." Id. at 297.

Second, the litigation must arise out of or relate to at least one of the activities that the defendant purposefully directed at the forum. O'Connor, 496 F.3d at 317. This cannot be assessed simply by determining whether the defendant's activity is a "but-for" cause of the plaintiff's alleged injury. A court must determine relatedness on a case-by-case basis focusing on "the notion of a tacit quid pro quo that makes

litigation in the forum reasonably foreseeable." _Id._ at 322.
This means that, in return for making a purposeful contact with a
forum, a non-resident tacitly becomes subject to the forum's
laws.  This requirement serves the purpose of keeping "the
jurisdictional exposure that results from a contact closely
tailored to that contact's accompanying substantive obligations."
_Id._ at 323.  The causal connection between the activity and
injury must be "intimate enough to keep the quid pro quo
proportional and personal jurisdiction reasonably foreseeable."
_Id._

Third, the exercise of jurisdiction must comport with
fair play and substantial justice.  _Int'l Shoe Co. v. Washington_,
326 U.S. 310, 316 (1945).  The burden is on the defendant to show
that, even though minimal contacts with the forum exist, there
are other compelling considerations that render the exercise of
jurisdiction unreasonable.  _Id._ at 324.  Additional consideration
is given when, as in this case, the defendants are citizens of
another country.  "Great care and reserve should be exercised
when extending out notions of personal jurisdiction into the
international field."  _Asahi Metal Indus. Co. v. Superior Court_
_of Solano County_, 480 U.S. 102, 115 (1987).  "The unique burdens
placed upon one who must defend oneself in a foreign legal system
should have significant weight in assessing the reasonableness of

stretching the long arm of personal jurisdiction over national borders." <u>Id.</u> at 114.

Additionally, the defendants argue that they are protected from jurisdiction by the "corporate shield" doctrine, which protects officers and directors by limiting the situations in which a court may exercise jurisdiction over them individually.[5] The United States Court of Appeals for the Third Circuit has never adopted the "corporate shield" doctrine. The Court will assume, for the purpose of deciding this motion, that the doctrine is applicable in this case but finds that it does not affect the outcome.

Courts have found exceptions to the doctrine when (1) the officer is alleged to be involved in tortious conduct for which he or she could be held personably liable, or (2) a corporate officer has been charged with violating a statutory scheme that provides for personal liability. <u>See, e.g.</u>, <u>Johnson</u>, 2007 WL 1030086 at *3; <u>Lautman</u>, 2000 WL 772818 at *5. The plaintiffs in this case have alleged that the defendants were involved in tortious and violated a statutory scheme that provides for individual liability by violating the Pennsylvania

_____

[5]    <u>See, e.g.</u>, <u>Johnson v. Phelps</u>, 2007 WL 1030086, (E.D. Pa. March 30, 2007); <u>Lautman v. Loewen Group, Inc.</u>, 2000 WL 772818, *5 (E.D. Pa. June 15, 2000); <u>Rittenhouse & Lee v. Dollars & Sense, Inc.</u>, 1987 WL 9665 (E.D. Pa. Apr. 15, 1997).

Uniform Trade Secrets Act ("PaUTSA").  See 12 Pa. C.S. § 5302.[6]
When either of the exceptions apply, a court applying the
doctrine adds the following three factors to its jurisdictional
analysis: (1) the defendant's role in the corporate structure,
(2) the nature and quality of the defendant's forum contacts, and
(3) the extent and nature of the defendant's personal
participation in the allegedly wrongful conduct.  See, e.g.,
Rittenhouse, 1987 WL 9665 at *4 n.6.


     3.   Thomas Curtis

     The Court finds that it has personal jurisdiction over
Thomas Curtis, regardless of whether the "corporate shield"
doctrine is applied.  As a director of CTL, Thomas Curtis is a
high-ranking corporate official with a significant level of
authority and the plaintiffs have alleged that Thomas Curtis was
directly and personally involved in the commission of the alleged
wrongful conduct.  The relevant inquiry under any analysis,
therefore, is whether Thomas Curtis's forum contacts with
Pennsylvania are sufficient to establish personal jurisdiction.

---

[6]    The PUTSA is a statutory scheme that provides for
individual liability.  It defines "misappropriation" to include
(1) acquisition of a trade secret of another by a person who
knows or has reason to know that the trade secret was acquired by
improper means; or (2) disclosure or use of a trade secret of
another without express or implied consent by a person.  A
"person" is defined as "[a] natural person, corporation, business
trust, estate, trust, partnership, association, joint venture,
government, governmental subdivision or agency or any other legal
or commercial entity."  12 Pa. C.S. § 5302.

First, by developing a business relationship with KDH and by directing telephone calls, letters, emails and faxes to KDH's Pennsylvania headquarters, Thomas Curtis purposefully availed himself of the privilege of conducting business in Pennsylvania.  It is not dispositive that Thomas Curtis has never visited Pennsylvania.  "Due process does not require a defendant's physical presence in the forum before personal jurisdiction is exercised."  Grand Entm't Group, Ltd. v. State Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993).

Telephone and other communications sent by the defendant into the forum state may count toward minimum contacts. Grand Entm't Group, Ltd. v. State Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993).  Thomas Curtis directed several telephone, letters, e-mail and facsimile communications into the forum.  These communications were not "random, fortuitous, or attenuated" or merely "informational."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985); Toys "R" Us, Inc. v. Two Step, S.A., 318 F.3d 446, 455 (3d Cir. 2003).  They arose out of a long-term business arrangement between CTL and KDH, a Pennsylvania corporation.  Through that business arrangement, Thomas Curtis enjoyed the benefits and protections of Pennsylvania law and availed himself of the privilege of conducting business in the forum.

Second, all of the plaintiffs' claims against Thomas Curtis arise out of the very contract that establishes the business relationship between the parties. "The mere existence of a contract is insufficient to establish minimum contacts." Budget Blinds, Inc. v. White, 536 F.3d 244, 261 (3d Cir. 2008) (citing Burger King, 471 U.S. at 478). Parties, however, who "reach out beyond one State and create continuing relationships and obligations with citizens of another State are subject to regulation and sanctions in the other State for the consequences of their activities." Burger King, 471 U.S. at 473. In evaluating minimum contacts arising out of a contractual relationship, therefore, a court should consider the prior negotiations, contemplated future consequences, the terms of the contract, and the parties' actual course of dealing to evaluate whether the defendant purposefully established minimum contacts with the forum. Budget Blinds, 536 F.3d at 261.

The Agreement between the parties in this case is not a contract for a single purchase of a good or limited to a particular event. Instead, the Agreement envisions a long-term business relationship between the parties to develop and manufacture the T-3 System. The Agreement, therefore, creates continuing obligations that bind both parties to certain responsibilities and restrictions in their dealings with each other and with third-parties. Burger King, 471 U.S. at 476.

20

Thomas Curtis's alleged breach of the Agreement and his corresponding alleged tortious activities all arise out of the relationship formed under the Agreement. The activities alleged would cause foreseeable injuries to KDH in Pennsylvania, and it is reasonable to require Thomas Curtis to submit to the burdens of litigating here. Id. at 480.

Thomas Curtis, therefore, has sufficient minimum contacts with Pennsylvania and is not shielded by the "corporate shield" doctrine. Having found that Thomas Curtis has sufficient minimum contacts with the forum, however, the Court must still determine whether the exercise of personal jurisdiction over Thomas Curtis comports with "traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316.

The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. O'Connor, 496 F.3d at 324. If minimum contacts are present, jurisdiction will be unreasonable only in rare cases, and the defendant has a heavy burden to show an absence of fairness or lack of substantial justice. Penzoil Prods., 149 F.3d at 207; Grand Entm't Group, 988 F.2d at 483.

A district court is to consider several factors when balancing jurisdictional reasonableness. Among those factors are

the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate and international judicial system's interest in obtaining the most efficient resolution of the controversies, and the procedural and substantive interests of other nations.  O'Connor, F.3d at 324.

The burden on the defendant is the primary concern in any case and that burden is all the more significant when, as here, the defendant must defend himself in a foreign legal system.  Id.  As a director of CTL, however, Thomas Curtis has already participated in and will continue to participate in this litigation whether or not he is a party.  There is little increased burden in having to defend himself in his personal capacity as well.

The convenience and efficiency factors tip toward the plaintiffs for the same reason.  Because this Court will already be trying the plaintiffs' case against CTL, it is more efficient to also try their case against Thomas Curtis for identical claims arising out of the same factual background.  Finally, the interest between the two fora, Pennsylvania and the United Kingdom, split fairly evenly.  Although the United Kingdom does have an interest in determining the rights and liabilities of its citizens, Pennsylvania has a similar interest in protecting the rights of its domestic corporations.

Because the factors either weigh toward jurisdiction or do not affect the balance, this case is not one of those "rare" or "compelling" cases where jurisdiction would be unreasonable despite the presence of minimum contacts.  O'Connor, 496 F.3d at 325.  The exercise of personal jurisdiction over Thomas Curtis, therefore, comports with traditional notions of fair play and substantial justice.

### 4.  Michael Curtis

The Court, however, finds that it does not have personal jurisdiction over defendant Michael Curtis.  Whether or not Michael Curtis is shielded by the "corporate shield" doctrine, the plaintiffs present no specific allegations of contacts between Michael Curtis and Pennsylvania.  The plaintiffs do not allege that Michael Curtis negotiated contracts with KDH or made phone calls or sent letters, emails or faxes to KDH's Pennsylvania offices.  The plaintiffs, therefore, have failed to allege any facts establishing the necessary minimum contacts between Michael Curtis and the forum state.

### B.  Failure to State a Claim

The defendants have also moved to dismiss the plaintiffs' breach of contract claims against Thomas and Michael Curtis pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.[7]  The defendants have not moved to dismiss any of the other claims against Thomas or Michael Curtis.  Because the Court finds that it has personal jurisdiction over Thomas Curtis only, the Court will evaluate the defendants' motion with regard to him alone.

The defendants argue that Thomas Curtis cannot be held liable for breach of contract because he is not a party to the Agreement.  The plaintiffs argue that, regardless of whether Thomas Curtis is a party to the Agreement, certain restrictive covenants in the Agreement bind both CTL and Thomas Curtis.  The Agreement's non-compete and non-solicitation provisions apply to "[CTL], its respective, officers, shareholders, members, principals, agents and successors and assigns" and provide specific performance as a remedy for breach.  See Teaming Agreement, § 8(a)(i), (b) & (f).[8]  The complaint alleges that the defendants violated these provisions by providing information to KDH's competitors about the T-3 System and by soliciting

---

[7]     In evaluating a claim under a Rule 12(b)(6) motion to dismiss, a court must accept all well-pleaded facts as true, but should disregard any legal conclusions.  The court must then determine whether the facts alleged are sufficient to show that the plaintiff has a "plausible claim for relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949).

[8]     The Court may consider the Agreement for the purposes of this Rule 12(b)(6) motion to dismiss because it was attached as "Exhibit B" to the plaintiffs' complaint.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1391 (3d Cir. 1994).

contracts from customers and competitors of KDH for the sale of the T-3 System.  Compl. ¶ 16, 35(a)-(f).  The plaintiffs argue that, in order to enforce these provisions, they must be able to enjoin both CTL and Thomas Curtis, a director of CTL.

Neither side has briefed this issue in a manner sufficient for the Court to determine the legal basis for their arguments.  Because the Court is going forward with the other claims against Thomas Curtis at this time, the Court denies the defendants' motion to dismiss the plaintiffs' breach of contract claim without prejudice.

An appropriate order follows separately.