IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KDH ELECTRONIC SYSTEMS, INC., :   CIVIL ACTION
et al.                    :
                       :
       v.           :
                       :
CURTIS TECHNOLOGY LTD.,     :
et al.                    :   NO. 08-2201

MEMORANDUM

McLaughlin, J.                       November 3, 2011

TABLE OF CONTENTS

Page

I.  Procedural Background. . . . . . . . . . . . . . . . . . 2

    A.  Complaint and Consent Orders . . . . . . . . . . . 2

    B.  The Court's Decisions. . . . . . . . . . . . . . . 3

    C.  Voluntary Dismissal Request and Counterclaims. . . . . 3

II.  Factual Background. . . . . . . . . . . . . . . . . . 4

    A.  Agreements Between CTL and KDHE. . . . . . . . . . . 4

    B.  Orders from Oceanscan. . . . . . . . . . . . . . . 5

    C.  Development of the T-3 System. . . . . . . . . . . 6

    D.  The Drexel Contract. . . . . . . . . . . . . . . . 7

III.  Lack of Personal Jurisdiction over the Channel Counterclaim
     Defendants . . . . . . . . . . . . . . . . . . . . . 8

    A.  Standard. . . . . . . . . . . . . . . . . . . . . 8

    B.  Analysis. . . . . . . . . . . . . . . . . . . . . 9

IV.  Failure to State a Claim. . . . . . . . . . . . . . . 13

    A.  Standard. . . . . . . . . . . . . . . . . . . . . 13

B.   Analysis. . . . . . . . . . . . . . . . . . .   14

     1.   Statute of Limitations.. . . . . . . . . .   14

     2.   Edwin Knell. . . . . . . . . . . . . . . .   14

     3.   Contracts Claims (Counts I through V). . . .   15

          a.   Counts I and III as to Non-Parties to the
               Contracts.. . . . . . . . . . . . . . .   16

          b.   Count I as to KDHE. . . . . . . . . . .   19

          c.   Count III as to KDHE. . . . . . . . . .   23

          d.   Count II. . . . . . . . . . . . . . . .   24

          e.   Count IV. . . . . . . . . . . . . . . .   27

          f.   Count V.. . . . . . . . . . . . . . . .   30

     4.   Torts Claims.. . . . . . . . . . . . . . .   31

          a.   Choice of Law.. . . . . . . . . . . . .   31

          b.   Gist of the Action Doctrine and Economic Loss
               Rule. . . . . . . . . . . . . . . . . .   33

          c.   Fraudulent Inducement to Contract (Count VI),
               Fraudulent Misrepresentation (Count XIII) &
               Negligent Misrepresentation (Count XIV)..   34

          d.   Law of the Case: Unjust Enrichment (Count
               VII) & Conversion (Count XVII) . . . . .   38

          e.   Tortious Interference with Contract against
               the KDH Counterclaim Defendants (Count VIII)
               & Tortious Interference with Contract against
               Channel Technologies Group (Count X) . . .   39

          f.   Commercial Disparagement (Count IX).. . .   43

          g.   Unjust Enrichment against Channel
               Technologies Group (Count XI)    . . . . .   44

          h.   Lanham Act (Count XII) & Unfair Competition
               (Count XVI).. . . . . . . . . . . . . .   45

i.   Pennsylvania Uniform Trade Secrets Act
     Violation (Count XV). . . . . . . . . . . 47

j.   Conspiracy (Count XVIII). . . . . . . . . 47

k.   Failure to Include Flow-Down Clauses (Count
     XIX) . . . . . . . . . . . . . . . . . . . 49

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KDH ELECTRONIC SYSTEMS, INC.,   :      CIVIL ACTION
et al.                          :
                                :
          v.                    :
                                :
CURTIS TECHNOLOGY LTD.,         :
et al.                          :      NO. 08-2201

MEMORANDUM

McLaughlin, J.                                    November 3, 2011

        This action involves a contract dispute over the

development of a sonar system called the T-3.  Over two years

after the initiation of this litigation, the defendants /

counterclaim plaintiffs, Curtis Technology Ltd. ("CTL") and its

CEO, Dr. Thomas Curtis, filed nineteen counterclaims against KDH

Electronics, Inc. ("KDHE"), KDH Defense Systems, Inc. ("KDHD"),

David Herbener, Edwin Knell, Channel Technologies Inc., and

Channel Technologies Group.[1]  The counterclaims include claims

for breach of contract, fraudulent inducement to contract, unjust

enrichment, tortious interference with contract, commercial

disparagement, violation of the Lanham Act, fraudulent and

negligent misrepresentation, violation of the Pennsylvania

Uniform Trade Secrets Act, unfair competition, conversion,

---

[1] The Court refers to Dr. Thomas Curtis and CTL as "Curtis,"
to KDHE, KDHD, David Herbener, and Edwin Knell as the "KDH
Counterclaim Defendants," and Channel Technologies Inc., and
Channel Technologies Group as the "Channel Counterclaim
Defendants."  Only KDHE and KDHD are plaintiffs in this action.

1

conspiracy, and failure to include "flow down" clauses pursuant to the federal regulations.

The counterclaim defendants move to dismiss for lack of personal jurisdiction over the Channel Counterclaim Defendants and for failure to state a claim.  Counterclaim Defs.' Mot. to Dismiss Pls.' Counterclaims ("MTD").  The Court denies the motion to dismiss for lack of personal jurisdiction without prejudice and grants the motion to dismiss for failure to state a claim in part and denies it in part.

I.   Procedural Background

A.   Complaint and Consent Orders

KDHE and KDHD (the "KDH entities" or "plaintiffs") filed their complaint against CTL, Dr. Thomas Curtis, and Michael Curtis on May 12, 2008.  The plaintiffs alleged breach of a Teaming Agreement entered into in April 2006, which outlined the roles played by each party in the design, testing, and manufacture of the T-3 sonar system.  The plaintiffs requested, among other relief, a preliminary injunction ordering the defendants to turn over all engineering and programming specifications for the T-3 system.

After the filing of the complaint, the parties entered into two consent orders in June and August 2008 designed to

provide the information needed for design, redesign, testing and manufacturing of the T-3 system to the KDH entities.

### B.   The Court's Decisions

On December 23, 2008, this Court issued a memorandum and order finding that KDH owned the T-3 system and the "Curtis Deliverables," as defined in the Teaming Agreement.[2]   Mem. & Order, Dec. 23, 2008 (hereinafter "Dec. 2008 Decision") (ECF No. 41) at 9, 11.   On March 3, 2009, after considering the parties' briefs, the Court issued a memorandum and order finding that the Defense Federal Acquisition Regulations did not impact the Court's Dec. 2008 Decision.   Finally, on March 19, 2010, the Court granted the defendants' motion to dismiss for lack of personal jurisdiction over defendant Michael Curtis, and denied the motion as to Dr. Thomas Curtis.

### C.   Voluntary Dismissal Request and Counterclaims

Following the Court's decisions, the plaintiffs filed a motion for voluntary dismissal without prejudice in May 2010. After retaining new counsel, the defendants opposed the motion and requested leave to file counterclaims, which the Court

---

[2] The opinion defined KDHE and KDHD collectively as "KDH." However, as the Court clarifies below, the Dec. 2008 Decision awarded ownership of the T-3 only to KDHE.   See infra Section IV.B.3.a.

3

granted.  Thus, over two years after the initiation of this case,
the defendants/counterclaim plaintiffs filed their counterclaims
on October 15, 2010, bringing four new parties into the
litigation.  Both sides have switched counsel since the beginning
of the litigation.

II.  Factual Background[3]

    A.   Agreements Between CTL and KDHE

         Dr. Thomas Curtis, a distinguished British sonar
scientist, is the CEO of CTL, a company that sells high-tech
processing modules for sonar, radar, and telecommunications
applications.  In 2005 and 2006, CTL and KDHE entered into a
series of three agreements regarding the T-3, a sonar system for
detecting underwater threats: (1) the Confidentiality Agreement,
which provided for non-disclosure of Curtis's intellectual
property; (2) the Consulting Agreement, which provided payments
to CTL in exchange for consulting services to KDHE; and (3) the
Teaming Agreement, for joint development and production of the T-
3 system.  Counterclaim ¶¶ 14, 18, 23-24, 34.

         The Teaming Agreement, which contained an integration
clause, restricted the parties from disclosing confidential

---

         [3] The Court accepts all well-pleaded facts in the
counterclaims as true and draws all reasonable inferences in
favor of the non-moving party, while disregarding any legal
conclusions.  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11
(3d Cir. 2009).

information about the T-3 product except to accomplish the
purposes of the agreement.  In addition, the agreement prohibited
CTL from working with others to compete with the T-3 system.
Lastly, it required KDHE to make its best efforts to select CTL
as the subcontractor to perform work required under any prime
contracts awarded to KDHE.  Id. Ex. D §§ 4, 7, 8, 9, 20.

When entering these agreements, CTL relied upon
representations that KDHE made to the U.S. Department of Defense
regarding its qualifications for developing sonar systems, as
well as market projections provided by KDHE President/CEO David
Herbener.  Id. ¶¶ 20, 27-29.


B.   Orders from Oceanscan

In August 2006, months after KDHE and CTL signed the
Teaming Agreement, Oceanscan, Ltd. approached CTL, seeking a
supply of CTL's sonar head modules for a project involving sonar
systems.  CTL obtained a waiver from David Herbener of the
restrictive covenant provision in the Teaming Agreement for work
with Oceanscan.  Herbener suggested that CTL negotiate directly
with Oceanscan and that CTL include a 10 percent mark-up on
prices to pass on to KDH.[4]  CTL then accepted two formal purchase

---

[4] The counterclaims frequently refer to the KDH Counterclaim
Defendants collectively as "KDH" for pleading purposes without
differentiating between which actors performed what actions.  In
this recitation of the facts, the Court uses "KDH" where the
counterclaims fail to specify the actor or actors.

orders from Oceanscan for sonar head modules. Counterclaim ¶¶ 47-49.

Later, however, KDH issued a formal letter to CTL, demanding, under threat of litigation, that it stop working with Oceanscan.  As a result, CTL informed Oceanscan that it could not deliver on the purchase orders and lost potential revenue and profits from the Oceanscan module sales.  Id. ¶¶ 56, 66-70.

C.   Development of the T-3 System

The Teaming Agreement divided responsibilities for the production of the T-3 system between CTL and KDHE.  KDHE was in charge of project management, sales and marketing efforts, systems integration, and the design and software for the topside or "above water" portion of the T-3.  CTL handled the "below water" sonar detection head design.  Counterclaim ¶¶ 41, 53, Ex. D at 15-16.

During 2006, CTL made good progress on the "below water" portion of the T-3.  CTL produced hardware modules and designs capable of 180-degree surveillance and successfully tested a T-3 prototype in extreme weather conditions.  However, KDHE was unable to develop a waterproof enclosure to house the sonar system or to integrate the different system components.  As a result, CTL produced the enclosure and assumed primary design

and assembly responsibilities for the complete, integrated T-3 sonar system.  Id. ¶¶ 51-52, 53-60, 62, 80-81.

By November 2007, the T-3 system was detecting targets and divers at extreme ranges, in excess of 900 meters.  In June 2008, pursuant to a consent order filed with this Court, CTL shipped the T-3 system prototype to KDH, which KDH acknowledged as exceeding specifications.  Id. ¶¶ 64, 99-100.

D.    The Drexel Contract

In August 2009, KDHE entered into an agreement with Drexel University to develop the T-3 system for the U.S. Army (the "Drexel Contract").  KDHE did not inform or consult with CTL about the Drexel Contract, or make attempts to negotiate a subcontract with CTL for work on the Drexel Contract.  Instead, KDHE awarded the subcontract to Sonatech, a division of Channel Technologies Group.  Counterclaim ¶¶ 72, 106-07, 109, 110-11. Sonatech was aware that KDHE and CTL had entered into the Teaming Agreement.  Nevertheless, Sonatech agreed with KDHE to exclude CTL from participation in the Drexel Contract.  Id. ¶¶ 158-59, 192.

III. Lack of Personal Jurisdiction over the Channel Counterclaim
Defendants

A.   Standard

The plaintiff bears the burden of demonstrating facts
that establish personal jurisdiction.  Pinker v. Roche Holdings
Ltd., 292 F.3d 361, 368 (3d Cir. 2002).  Personal jurisdiction
analysis generally involves a two-step inquiry:  first, whether
jurisdiction is permissible under the applicable state law;
second, whether exercising jurisdiction comports with due
process.  Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149
F.3d 197, 200 (3d Cir. 1998).  Personal jurisdiction consists of
two categories:  general jurisdiction and specific jurisdiction.
Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 300 (3d Cir. 2008).
The counterclaim plaintiffs argue only that specific jurisdiction
exists as to Channel Technologies Group.[5]

Pennsylvania's long-arm statute authorizes specific
jurisdiction over persons outside of the state "to the fullest
extent allowed under the Constitution" and "based on the most

---

[5] Curtis states that their claims against the Channel
Counterclaim Defendants are directed only at the corporation of
which Sonatech is a division.  Counterclaim ¶ 7. The Channel
Counterclaim Defendants have represented to the Court that
Sonatech is a division of Channel Technologies Group, and not of
Channel Technologies Inc.  MTD at 39.  Curtis did not challenge
this representation in its opposition, and conceded at oral
argument that Channel Technologies Inc. should be dismissed.  See
Opp. to MTD at 78-79 (arguing only as to Channel Technologies
Group); Tr. of Oral Argument, 20, Sept. 14, 2011.  The Court
grants the motion to dismiss as to Channel Technologies Inc.

minimum contact" with Pennsylvania.  42 Pa. Cons. Stat.
§ 5322(b); see also Kehm Oil, 537 F.3d at 299-300.  The statute's
reach, therefore, is coextensive with the limits of
constitutional due process.  Pennzoil, 149 F.3d at 200.

        Determining whether the exercise of jurisdiction
comports with due process involves a three-part test: (1) whether
the defendant purposefully directed its activities at the forum;
(2) whether the litigation arises out of or relates to one of
those activities; and, if so, (3) whether the exercise of
jurisdiction comports with fair play and substantial justice.
O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d
Cir. 2007).


    B.   Analysis

        As pleaded, the counterclaims fail to establish
specific jurisdiction.  The counterclaims allege only two
jurisdictional facts connecting Channel Technologies Group to the
forum state: (1) that KDH "had been in discussions with" Sonatech
regarding the T-3; and (2) that KDH awarded a subcontract to
Sonatech for work on the Drexel Contract.  Counterclaim ¶¶ 72,
111.

First, Curtis did not specify either the nature or the frequency of Sonatech's discussions with KDH.[6]  Second, as to the subcontract between KDHE and Sonatech for the Drexel Contract, the mere existence of a contract with a forum-based party is insufficient, without more, to establish personal jurisdiction. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478-79 (1985). Courts must also look to "prior negotiations and contemplated future consequences." Id. at 479; see also Grand Entertainment Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993).  Curtis, however, has not pleaded any facts regarding negotiations or consequences.

Curtis attempts to cure their deficient pleading in their opposition brief, which sets out additional facts and exhibits meant to support personal jurisdiction.  As a technical matter, Curtis may not cure their insufficient pleading with additional facts in opposition to a motion to dismiss.  See Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988).  Nevertheless, because the Court finds that these additional facts and exhibits would have, if properly pleaded,

---

[6] While due process does not require physical presence in the forum state, minimal communication with individuals in the forum state, without more, will not subject the defendant to jurisdiction.  See Grand Entertainment Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993); IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 260 n.3 (3d Cir. 1998).  Without more information as to the extent and types of communications between Sonatech and the KDH entities, this Court cannot find that personal jurisdiction exists.

10

merited jurisdictional discovery, the Court denies the motion to dismiss for lack of personal jurisdiction without prejudice.

The Third Circuit has explained that if "the plaintiff's claim is not clearly frivolous [as to the basis for personal jurisdiction], the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden." <u>Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances</u>, 723 F.2d 357, 362 (3d Cir. 1983). Here, the additional facts and exhibits in Curtis's opposition, had they been properly pleaded, demonstrate a non-frivolous basis for personal jurisdiction.

First, the additional facts and exhibits in the opposition brief suggest that Sonatech purposefully directed activities toward Pennsylvania. The Third Circuit has found that at least twelve communications to the forum state and negotiations for an agreement that contemplated significant ties with the forum constituted purposeful availment. <u>Grand Entertainment</u>, 988 F.2d at 482-83. Here, the additional facts and exhibits show that Sonatech employees communicated at least ten times via email with KDH employees regarding work on the T-3 system – including once to mail a copy of a Non-Disclosure Agreement between Sonatech and KDH.[7] <u>See</u> Opp. to MTD, Ex. 4.

--------------------------------------------------

[7] It is not clear which KDH entity employed Ben Conaway, a recipient of many of the emails. Curtis has pleaded, however, that the various KDH entities were all located in Pennsylvania at

11

Thus, there appear to be at least two agreements between Sonatech and a Pennsylvania entity:  a subcontract for work on the T-3 system under the Drexel Contract and a Non-Disclosure Agreement. Although the emails and the existence of two agreements whose terms are unknown may not make out a case for personal jurisdiction, at the very least they warrant jurisdictional discovery under Compagnie Des Bauxites.

Second, the litigation "arises out of or relates to" one of these contacts.  In O'Connor v. Sandy Lane Hotel Co., the Third Circuit interpreted this phrase to require a closer causal connection than that provided by the but-for test, but a looser connection than the tort concept of proximate causation.  496 F.3d 312, 323 (3d Cir. 2007).  Here, Curtis alleges, and the Court accepts as true, that Sonatech was aware that KDHE and CTL had entered into a Teaming Agreement.  In spite of this, Sonatech entered into agreements to supplant CTL as the subcontractor in the Drexel Contract.  The litigation is therefore causally connected to Sonatech's communications and agreements with KDH entities or employees about the T-3 system.  As a result, jurisdictional discovery in this case would also significantly overlap with discovery on the merits of the claims against Channel Technologies Group.

---

the relevant time periods.  Opp. to MTD at 79.

12

Lastly, Channel Technologies Group has not raised any arguments regarding the "fair play and substantial justice" prong of the due process inquiry.

Therefore, because the counterclaims, if properly pleaded, would have merited jurisdictional discovery, the Court denies the motion to dismiss for lack of personal jurisdiction over Channel Technologies Group without prejudice.  The Court permits discovery to go forward as to Channel Technologies Group on all claims against it that are not dismissed below and will not differentiate between jurisdictional and merits discovery.

IV.   Failure to State a Claim

    A.   Standard

In considering a motion to dismiss for failure to state a claim, a district court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the non-moving party, while disregarding any legal conclusions.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  The court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

Where a statute of limitations defense is raised, the time bar must be apparent on the face of the complaint to warrant

13

dismissal.  <u>See Robinson v. Johnson</u>, 313 F.3d 128, 135 (3d Cir. 2002).


B.   <u>Analysis</u>

1.   <u>Statute of Limitations</u>

The counterclaim defendants raise statute of limitations defenses as to three counts:  commercial disparagement (Count IX), conversion (Count XVII), and civil conspiracy (Count XVIII).  Because the Court dismisses all three counts for failure to state a claim, the Court does not address the statutes of limitations for these claims.


2.   <u>Edwin Knell</u>

The counterclaim defendants object to the generic nature of the allegations against each defendant, but against Edwin Knell in particular.  MTD at 8-9.  The Court agrees that the counterclaims fail to state any plausible claims for relief against Knell.

Other than being grouped into "KDH" for pleading purposes, the <u>only</u> factual allegations specific to Knell in the counterclaims are that (1) Knell was Vice President of KDHE and KDHD at relevant time periods, (2) Knell served briefly as project manager for designing the T-3 sonar system, and (3) Knell sent one email indicating that KDH was in discussions with

14

Sonatech.  Counterclaim ¶¶ 6, 55, 64, 72.  These three factual allegations form the basis of seventeen claims against Knell.

These facts fail to state claims against Knell even under the liberal pleading standards of Rule 8(a).  Fed. R. Civ. Pro. 8(a).  The three allegations regarding Knell's tenure as VP, project manager, and as the sender of one email do not contain sufficient factual matter for the Court to draw the reasonable inference that Knell is liable for <u>any</u> of the misconduct alleged. <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007).

The Court therefore grants the motion to dismiss for failure to state a claim as to all counts against Edwin Knell.

### 3.   Contracts Claims (Counts I through V)

Curtis has raised three breach of contract claims (Counts I through III) against the KDH Counterclaim Defendants based on violations of the following agreements:  (1) the Teaming Agreement (Counts I and II), (2) the Confidentiality Agreement (Count II), and (3) the Consulting Agreement (Count III).  In addition, Curtis has styled two more counts (Counts IV and V) as breach of contract claims.

The Court dismisses Counts I, III, and IV as to all counterclaim defendants except KDHE, and dismisses Counts II and V as to all counterclaim defendants for failure to state a claim.

a.   Counts I and III as to Non-Parties to the
Contracts

The Court dismisses Counts I and III as to all KDH Counterclaim Defendants that were not parties to the contracts alleged to have been breached.

Under Pennsylvania law, a defendant who is neither a party nor signatory to a contract cannot be held liable for breach of the contract.  See Electron Energy Corp. v. Short, 597 A.2d 175, 177 (Pa. Super. Ct. 1991), aff'd 618 A.2d 395 (Pa. 1993).  Furthermore, as a general matter, when a corporation enters into a contract, the corporation alone is liable.  See Loeffler v. McShane, 539 A.2d 876, 879 (Pa. Super. Ct. 1988).  In exceptional situations, courts may pierce the corporate veil in equity, but doing so requires a determination that "the corporate fiction is being used by the corporation itself to defeat public convenience, justify wrong to third parties dealing with the corporation . . . perpetrate fraud or other similar reprehensible conduct."  Sams v. Redevelopment Auth., 244 A.2d 779, 781 (Pa. 1968).

Here, Curtis has alleged only that KDHE was a party to the three contracts at issue.  See Counterclaim ¶¶ 34, 95, 124, Ex. D (the Teaming Agreement); id. ¶¶ 18, 129, Ex. A (the Confidentiality Agreement); id. ¶¶ 23, 132-33, Ex. B (the Consulting Agreement).

16

As to David Herbener, the only potentially relevant allegations in the counterclaims are that KDHE "may function" as Herbener's alter ego, and that Herbener uses KDHE and KDHD "to suit his purposes and without regard to proper corporate formalities."  Counterclaim ¶¶ 4, 5, 107 n.4; id. ¶¶ 95-96. Regardless of whether Curtis intended to plead against Herbener under a veil-piercing theory or an alter-ego theory,[8] such conclusory assertions do not state a plausible claim for relief. Iqbal, 129 S. Ct. at 1949-50.  Counts I and III are therefore dismissed as to David Herbener for failure to state a claim.[9]

Similarly, KDHD was also not a party to the contracts at issue.  Curtis, however, argues that KDHD should be judicially estopped from arguing that it was not a party because it claimed – and was awarded – rights under the Teaming Agreement.  Opp. to MTD at 28-29.

Judicial estoppel is an extraordinary remedy designed to prevent litigants from "playing fast and loose with the

---

[8] The two theories are not the same and are often confused. See Brown v. Astro Holdings, Inc., 385 F. Supp. 2d 519, 524 (E.D. Pa. 2005).

[9] Curtis claims that judicial estoppel bars Herbener from arguing that he is not a proper defendant because the original complaint named Dr. Thomas Curtis and his son, Michael Curtis, as defendants on breach of contract claims.  See Opp. to MTD at 29. This argument is without merit, as Herbener is not a plaintiff in this case.

courts."[10]  <u>Ryan Operations G.P. v. Santiam-Midwest Lumber Co.</u>,
81 F.3d 355, 358, 365 (3d Cir. 1996) (internal quotation marks
omitted).  The doctrine should only be applied "to avoid a
miscarriage of justice."  <u>Krystal Cadillac-Oldsmobile GMC Truck,
Inc. v. Gen. Motors Corp.</u>, 337 F.3d 314, 319 (3d Cir. 2003).  In
the Third Circuit, judicial estoppel has three threshold
requirements: there must be (1) irreconcilably inconsistent
positions; (2) adopted in bad faith; and (3) "a showing that
judicial estoppel is tailored to address the harm and that no
lesser sanction would be sufficient."  <u>Chao v. Roy's Const.,
Inc.</u>, 517 F.3d 180, 186 n.5 (3d Cir. 2008).  In addition,
judicial estoppel is only appropriate where the defending party
convinced the court to accept its earlier position.  <u>See</u> <u>G-I
Holdings, Inc. v. Reliance Ins. Co.</u>, 586 F.3d 247, 262 (3d Cir.
2009).

     The Court declines to apply judicial estoppel in this
case.  The plaintiffs' original complaint referred to KDHE and
KDHD collectively as "KDH" and did not specify which KDH entity
was a party to the Teaming Agreement.  The Court need not decide
whether doing so was irreconcilably inconsistent with the
counterclaim defendants' current position that KDHD was not a
party because Curtis has not alleged any facts to support an

---

     [10]  The Third Circuit applies federal judicial estoppel law
in diversity cases.  <u>G-I Holdings, Inc. v. Reliance Ins. Co.</u>, 586
F.3d 247, 261 (3d Cir. 2009).

inference of bad faith.  Curtis alleges that the plaintiffs, KDHE and KDHD, each asserted rights under agreements to which they were not parties through "sleights of hand" by pleading as "KDH." Counterclaim ¶ 96.  This characterization of the facts, however, does not show that KDHE and KDHD adopted the position in bad faith.

Furthermore, a lesser remedy is available.  The Court recognizes that its December 2008 decision may have been ambiguous in its holding that "KDH" - defined in the opinion as KDHE and KDHD, collectively - owns the T-3 system and the Curtis Deliverables.  The Court now clarifies that its December 2008 decision awarded ownership only to KDHE, the entity that was party to the Teaming Agreement.

Therefore, because Curtis has not provided "evidence of intent to manipulate or mislead the courts," the Court declines to apply the extraordinary remedy of judicial estoppel and dismisses Counts I and III as to KDHD.  Ryan Operations, 81 F.3d at 365.

b.   Count I as to KDHE[11]

The Court finds that the counterclaims state a claim against KDHE for breach of the Teaming Agreement (Count I).

---

[11] It is undisputed that KDHE was a party to the contracts at issue in the breach of contract claims.

Count I alleges that KDHE failed to make any effort to include CTL as a party to the Drexel Contract, as required by section 9 of the Teaming Agreement.  Counterclaim ¶¶ 124, 103-111.  Section 9 provides, in relevant part: "In the event of, and after an award to KDH of a prime contract, [KDHE] will offer and [CTL] will accept subcontracts to perform work and render services required by the prime contracts."  Counterclaim Ex. D. The counterclaim defendants, however, argue that Drexel awarded KDHE a subcontract, not a prime contract, and thus did not trigger KDHE's obligation to offer CTL a subcontract.  The parties disagree over the Teaming Agreement's usage of the terms "prime contract" and "subcontract," which are not defined in the contract.

"The paramount goal of contract interpretation is to determine the intent of the parties."  Baldwin v. Univ. of Pittsburgh Med. Ctr., 636 F.3d 69, 75 (3d Cir. 2011) (citations omitted).  The contract itself is the strongest evidence of the parties' intent.  See id. at 76.  Unambiguous contracts are "capable of only one objectively reasonable interpretation."  Id. at 76.  "While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact."  Kripp v. Kripp, 849 A.2d 1159, 1163 (Pa. 2004).

Here, the Court cannot dismiss the breach of contract claim against KDHE as a matter of law because the Teaming

20

Agreement is subject to more than one reasonable interpretation regarding the meaning of "prime contract" and "subcontract." KDHE's interpretation that the terms in section 9 of the Teaming Agreement refer to the type of contract awarded is not unreasonable.  However, when read in conjunction with other provisions in the contract, the terms could also be reasonably interpreted to refer to the functional relationship between KDHE and CTL.

First, the whereas clause specifies that "[KDHE] shall act as the prime contractor, and [CTL] shall act as subcontractor, for the development and supply of Product to the Customers."  Counterclaim Ex. D at 1.  This clause uses "prime contractor" and "subcontractor" to describe the relationship between the parties, not the type of contract awarded.  Second, section 4 of the Teaming Agreement specifies that each party will "exert its best effort to prepare a proposal which will result in the selection of [KDHE] as prime contractor by the Customer and the acceptance of [CTL] as a subcontractor for their respective portion of the work."  Counterclaim Ex. D at 2.  Again, the word "respective" suggests that the use of the terms in section 4 refers to the relationship of the parties.

Thus, the Teaming Agreement is ambiguous on the issue of whether the award of the Drexel Contract to KDHE triggered the obligation to offer CTL a subcontract.  At this stage, ambiguity

21

in the agreement is sufficient to overcome the motion to dismiss. See Whelan v. CareerCom Corp., 711 F. Supp. 198, 200 (M.D. Pa. 1989) (denying motion to dismiss contract claim where there were two reasonable interpretations of a contract term).

KDHE counters, however, that CTL itself breached the Teaming Agreement by failing to provide the required deliverables under the contract.  MTD at 10-11.  KDHE makes two arguments relating to the breach:  (1) first, CTL's breach prevents them from suing for breach, and (2) second, CTL's breach discharges KDHE's obligations under the Teaming Agreement.  Both arguments turn on the question of whether CTL's breach was material.[12] Neither argument has merit in the context of this motion to dismiss.

A breach is material when it goes to the "essence of the contract" and "will deprive the injured party of the benefit that is justifiably expected" under the contract.  Gen. Motors Corp. v. New A.C. Chevrolet, Inc., 263 F.3d 296, 315 (3d Cir. 2001) (citing Farnsworth on Contracts § 8.16 at 495-97).  Whether

---

[12] Under Pennsylvania law, "[a] party that materially breaches a contract cannot be awarded compensation for damages resulting from the other party's subsequent refusal to perform its obligations under the contract."  J.W.S. Delavau, Inc. v. E. Am. Transp. & Warehousing, Inc., 810 A.2d 672, 686 (Pa. Super. Ct. 2002) (emphasis added).  Similarly, the Third Circuit has recognized that "when one party to a contract commits a material breach, the non-breacher has the option of . . . terminating the agreement in its entirety."  Gen. Motors Corp. v. New A.C. Chevrolet, Inc., 263 F.3d 296, 315 n.5 (3d Cir. 2001).

a breach of contract is material is generally an issue of fact unless the materiality question "admits of only one reasonable answer." <u>Norfolk S. Ry. Co. v. Basell USA Inc.</u>, 512 F.3d 86, 92 (3d Cir. 2008).

In December 2008, this Court held that Curtis's production of partially obscured source code to KDH did not comply with the terms of the Teaming Agreement.  Dec. 2008 Decision at 15.  However, the Court did not indicate that the breach was material.  Furthermore, Curtis alleges that they substantially complied with their obligations under the Teaming Agreement and that KDHE was not deprived of the benefit of its bargain.  Among other things, Curtis alleges that they designed and developed sonar system components, manufactured a waterproof enclosure, and tested completed prototypes of the T-3 system with positive results.  Counterclaim ¶¶ 33, 51-52, 53, 60-63, 64, 100. At this stage, the Court must accept these allegations as true. Therefore, the Court denies the motion to dismiss Count I as against KDHE.

c.   <u>Count III as to KDHE</u>

Count III alleges breach of the Consulting Agreement. Counterclaim ¶¶ 132-33.  Curtis has pleaded with adequate specificity that CTL is owed money under the terms of the Consulting Agreement and that the amount is unpaid and overdue.

23

Id.  The counterclaim defendants have not made any arguments with respect to their motion to dismiss this count, other than in the headings of their motion.  See MTD at 7; see also id. at 12 (making no arguments as to Count III).  Therefore, the Court denies the motion to dismiss Count III as against KDHE.

        d.  Count II

Count II alleges that KDHE breached section 7(b) of the Teaming Agreement as well as the 2005 Confidentiality Agreement by disclosing confidential information to Drexel University and Sonatech.  Counterclaim ¶ 129.  Curtis has failed to state a claim for breach of either contract.

Section 7(b) of the Teaming Agreement constrains KDHE's use of the Curtis Deliverables to uses "to accomplish the purposes of the Agreement."  Counterclaim Ex. D; see also Dec. 2008 Decision at 13-14 (recognizing that section 7(b) constrains the use of the Curtis Deliverables to use on the T-3 project).  The Teaming Agreement states its purpose as "developing and manufacturing 'Best in Class' [T-3 sonar systems] for sale to public and private entities."  Counterclaim Ex. D at 1.  KDHE argues that they are not liable for breaching section 7(b) because they disclosed confidential information while under contract to develop and manufacture the T-3.  The Court agrees.

24

Curtis itself alleges that the purpose of the Drexel Contract, for which Sonatech was awarded a subcontract, was to develop the T-3 system.  Counterclaim ¶¶ 109-111.  Nevertheless, Curtis alleges that KDHE disclosed confidential information to Sonatech and Drexel University in violation of the Teaming Agreement.  Id. ¶ 129.  However, section 7(b) does not limit KDHE's use of confidential information to the development of the T-3 system only in conjunction with Curtis.  Rather, the Teaming Agreement explicitly contemplates the possibility of a subcontractor other than CTL working with KDHE to perform work on the T-3 system.

For example, section 9 of the Teaming Agreement provides that if KDHE and CTL are unable to negotiate a mutually satisfactory subcontract, KDHE is free to take "whatever steps would then be necessary . . . to satisfy its prime contract obligations," including award a subcontract on a competitive basis after complying with certain obligations to CTL. Counterclaim Ex. D.  In other words, the Teaming Agreement does not require that CTL be hired as the subcontractor to every contract awarded to KDHE.  Thus, even if the Court accepts as true the claims that KDHE disclosed confidential information to Drexel and Sonatech for the Drexel Contract, Curtis has not stated a claim for breach of section 7(b) of the Teaming Agreement.

25

Likewise, Curtis fails to state a claim for breach of the Confidentiality Agreement because the Teaming Agreement is a fully integrated contract that supersedes the Confidentiality Agreement.[13]  The issue of whether a writing is an integrated contract is a question of law.  See Lenzi v. Hahnemann Univ., 455 A.2d 1375, 1379 (Pa. Super. Ct. 1995).  In Pennsylvania, if a contract is fully integrated, the parol evidence rule bars evidence of "any previous oral or written agreements involving the same subject matter as the contract . . . to explain or vary the terms of the contract."  Yocca v. Pittsburgh Steeler Sports, Inc., 854 A.2d 425, 436-37 (Pa. 2004).

Section 20 of the Teaming Agreement contains an integration clause, which provides that the contract "is the complete agreement of the parties relating to the subject matter hereof and supersedes all prior agreements relating thereto." Counterclaim Ex. D at 10-11.  As stated above, section 7(b) of the Teaming Agreement sets forth the parties' agreement regarding confidentiality.  Because the Teaming Agreement is fully integrated, the parol evidence rule bars consideration of the Confidentiality Agreement to explain or vary the terms of the Teaming Agreement's confidentiality provision.

---

[13] KDHE also argues that Curtis attached only an unsigned copy of the contract.  However, Curtis adequately alleged the existence of a fully executed Confidentiality Agreement and was not required to furnish a signed contract at this stage of the proceedings.  Counterclaim ¶¶ 18-19.

The Court therefore dismisses Count II against all counterclaim defendants for failure to state a claim for breach of either section 7(b) of the Teaming Agreement or of the 2005 Confidentiality Agreement.

e.   <u>Count IV</u>

Count IV alleges that the KDH Counterclaim Defendants reneged upon their consent that CTL could supply sonar modules to Oceanscan, a third-party with whom CTL had been working.  Curtis styled the count as a breach of contract claim, but did not clearly set forth which contract they claim was breached.  The Court discerns two possibilities:  (1) Curtis alleges that KDHE violated an as-yet-unmentioned agreement to waive the Teaming Agreement's restrictive covenant in exchange for a 10 percent mark-up (or other valid consideration) in price; or (2) Curtis alleges that KDHE breached the Teaming Agreement itself.

Section 8 of the Teaming Agreement, the restrictive covenant provision, provides that CTL shall not enter into contracts or arrangements with any other entity that would conflict with CTL's obligations regarding the T-3 system without prior written consent from KDHE.  Counterclaim Ex. D.  Curtis claims that David Herbener provided a waiver of the Teaming Agreement's restrictive covenant provision, told CTL to negotiate directly with Oceanscan, and suggested that CTL include a "10%

27

mark-up of prices, that would be passed on to KDH." Counterclaim ¶ 48.

Curtis fails to allege, however, either whether CTL accepted Herbener's suggestion, or whether there was, in fact, an agreement that KDHE would waive the restrictive covenant of the Teaming Agreement as to Oceanscan in exchange for the 10 percent mark-up (or some other valid consideration). In other words, Curtis has failed to plead the existence of such a contract. Therefore, to the extent Count IV is based on the violation thereof, the Court dismisses the claim as to all counterclaim defendants for failure to state a claim.[14]

However, to the extent that Count IV is based on a breach of the Teaming Agreement itself, the Court denies the motion to dismiss as to KDHE, the only counterclaim defendant that was party to the Teaming Agreement.[15] Although the counterclaims are not artfully pleaded, at oral argument, counsel for Curtis explained that Count IV was based on a theory of breaching the duty of good faith and fair dealing. In essence, Curtis alleges that KDHE unreasonably reneged upon their consent

---

[14] It is axiomatic that a breach of contract claim may not be maintained in the absence of a valid contract. <u>Northwestern Mut. Life Ins. Co. v. Babayan</u>, 430 F.3d 121, 136 (3d Cir. 2005).

[15] The Court grants the motion to dismiss this count as to all other counterclaim defendants not party to the contract. <u>See supra</u> Section IV.B.3.a.

that CTL could supply modules to Oceanscan.  Tr. of Oral

Argument, 80-81, Sept. 14, 2011;  Counterclaim ¶ 135.

The Court observes that it is not entirely clear

whether a duty of good faith and fair dealing inheres in every

contract under Pennsylvania law.  Compare Parkway Garage, Inc. v.

City of Philadelphia, 5 F.3d 685, 701 (3d Cir. 1993), overruled

on other grounds by United Artists Theater Circuit, Inc. v.

Township of Warrington, 316 F.3d 392 (3d Cir. 2003) with Somers

v. Somers, 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992) ("The

general duty of good faith and fair dealing in the performance of

a contract . . . has been adopted in this Commonwealth.") and

Liazis v. Kosta, Inc., 618 A.2d 450, 454 (Pa. Super. Ct. 1992)

("[E]very contract imposes upon the parties a duty of good faith

and fair dealing in the performance and enforcement of the

contract.").  See also Fremont v. E.I. DuPont DeNemours & Co.,

988 F. Supp. 870, 874-75 (E.D. Pa. 1997) (discussing the lack of

clarity); Ash v. Cont'l Ins. Co., 932 A.2d 877, 884 n.2 (Pa.

2007) (declining to reconcile conflicting case law regarding

applicability of covenant of good faith and fair dealing).[16]

---

[16] In some cases, courts have found that there is no
independent cause of action for breach of a duty of good faith
and fair dealing where the actions forming the basis of a breach
of contract claim are essentially the same as the actions forming
the basis of the bad faith claim.  See, e.g., LSI Title Agency,
Inc. v. Eval. Servs., Inc., 951 A.2d 384, 391 (Pa. Super. Ct.
2008) (citation omitted); Boeynaems v. LA Fitness Int'l, LLC, No.
11-2644, 2011 WL 4048512, at *13-14 (E.D. Pa. Sept. 12, 2011).
Here, however, the factual allegations underlying the bad faith

However, the counterclaim defendants have not moved to dismiss on this ground.  The only argument that the counterclaim defendants raise in support of their motion to dismiss Count IV is that there was no signed written consent, as required by the Teaming Agreement.  However, Curtis has alleged enough facts for the Court to reasonably infer that CTL received the requisite consent and fairly relied upon that consent in its business dealings with Oceanscan.  Therefore, at this stage, the Court denies the motion to dismiss Count IV as to KDHE and grants the motion as to all other counterclaim defendants.

f.   <u>Count V</u>

Count V alleges that Curtis detrimentally relied upon the KDH Counterclaim Defendants' representations, entered into the Teaming Agreement and subjected itself to a restrictive covenant, and forewent many opportunities in the harbor security market as a result.  Counterclaim ¶¶ 138-140.

Detrimental reliance is another name for promissory estoppel.  <u>Matarazzo v. Millers Mut. Grp., Inc.</u>, 927 A.2d 689, 692 (Pa. Commonw. Ct. 2007).  Promissory estoppel is "invoked in situations where the formal requirements of contract formation have not been satisfied and where justice would be served by

---

claim - i.e., that KDHE unreasonably reneged on consent - differ from those underlying the breach of contract claim.

enforcing a promise." <u>Carlson v. Arnot-Ogden Mem. Hosp.</u>, 918 F.2d 411, 416 (3d Cir. 1990) (citing <u>Cardmone v. Univ. of Pittsburgh</u>, 384 A.2d 1228, 1233 n.9 (Pa. Super. Ct. 1978)).  The doctrine comes into play only when there is no binding contract, although parties are permitted to plead in the alternative.

In this case, the Court has already held that KDHE has full ownership rights over the T-3 system and the Curtis Deliverables under the Teaming Agreement.  Dec. 2008 Decision at 11.  Although not stated explicitly, finding that the Teaming Agreement was a valid, binding contract was necessary to that holding.  Thus, under the "law of the case" doctrine,[17] Curtis has no cognizable claim for detrimental reliance because a valid contract exists.  The Court therefore dismisses Count V as to all counterclaim defendants.

### 4.  <u>Torts Claims</u>

#### a.  <u>Choice of Law</u>

The parties' briefing on the motion to dismiss raises a potential choice of law issue.  The counterclaim defendants base their motion solely on Pennsylvania law.  In opposition, Curtis claims that the Court cannot grant the counterclaim defendants'

---

[17] The doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.  <u>Pepper v. United States</u>, 131 S. Ct. 1229, 1250 (2011).

motion to dismiss the tort claims because discovery is necessary to determine which state's law applies under Pennsylvania's complex choice of law rules.[18]   See Opp. to MTD at 18-22.   In doing so, Curtis tosses a hodgepodge of states into the choice of law ring, including Pennsylvania, North Carolina, New Jersey, California, and Great Britain.   But Curtis fails to make a single substantive argument as to why any other state's law, other than Pennsylvania's, ought to apply to this case.   See id. at 19.   Nor has Curtis demonstrated that there is a conflict between Pennsylvania law and any other state's law except regarding the applicability of the gist of the action doctrine.

The Court finds that Pennsylvania law applies.[19]   This action arises out of the Teaming Agreement, a contract between CTL and a Pennsylvania entity that selects Pennsylvania law to govern the parties' relationship.   Several of the torts claims relate to KDHE's failure to include CTL as a subcontractor to the Drexel Contract, a contract between a Pennsylvania entity and a

_____

[18] Federal courts apply the choice of law rules of the forum state in diversity cases.   Kruzits v. Okuma Mach. Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994).

[19] Normally, Pennsylvania choice of law analysis involves a two-step inquiry.   First, the court engages in an "interest analysis" of the policies of all interested states and characterizes the case as a true conflict, false conflict, or unprovided-for case.   Budget Rent-A-Car Sys., Inc. v. Chappell, 407 F.3d 166, 170 (3d Cir. 2005).   Second, where a true conflict exists, the Court must determine which state has the greater interest in the application of its law.   Hammersmith v. TIG Ins. Co., 480 F.3d 220, 231 (3d Cir. 2007).

Pennsylvania university.  Merely pointing out that a host of other states may have some marginal connection to the facts of the case does not automatically raise a choice of law issue that defeats a motion to dismiss.

  b. Gist of the Action Doctrine and Economic Loss Rule

   The KDH Counterclaim Defendants move to dismiss the following counts based on the gist of the action doctrine and the economic loss rule: fraudulent inducement (Count VI), unjust enrichment (Count VII), tortious interference (Count VIII), Pennsylvania Uniform Trade Secrets Act ("PUTSA") (Count XV), common law unfair competition (Count XVI), conversion (Count XVII), and common law conspiracy (Count XVIII).  MTD at 15.

   As a preliminary matter, the gist of the action doctrine operates to preclude a plaintiff from re-casting ordinary breach of contract claims into tort claims.  <u>Hart v. Arnold</u>, 884 A.2d 316, 339 (Pa. Super. Ct. 2005).  Similarly, the economic loss rule prevents plaintiffs from "recovering in tort economic losses to which their entitlement flows only from a contract."  <u>Sun Co., Inc. v. Badger Design & Constructors, Inc.</u>, 939 F. Supp. 365, 371 (E.D. Pa. 1996) (citing <u>Duquesne Light Co. v. Westinghouse Elec. Corp.</u>, 66 F.3d 604, 618 (3d Cir. 1995)).  However, the counterclaim defendants have cited no case law - and the Court is not aware of any - applying these doctrines to

preclude statutory claims such as Curtis's claim under PUTSA.
The Court therefore declines to dismiss the PUTSA claim on the
grounds that they are precluded by these doctrines.

As for the other counts, the Court also declines to
decide the motion on these grounds because the Court disposes of
the claims for failure to state a claim.

>    c.   Fraudulent Inducement to Contract (Count VI),
>         Fraudulent Misrepresentation (Count XIII)[20] &
>         Negligent Misrepresentation (Count XIV)

Curtis claims that "KDH" made false statements that
induced them to enter into the Teaming Agreement.  These alleged
misrepresentations fell into three subject areas: (1) experience
in sonar technology, (2) market sales projections, and (3)
statements of intent to jointly develop the T-3 with CTL and make
best efforts to select CTL as a party to any contract.
Counterclaim ¶¶ 20-22, 27-29, 142.  Curtis has failed to
demonstrate the falsity of the first two statements regarding
experience in sonar technology and sales projections, and the
parol evidence rule bars consideration of the statements
regarding subject matter covered by the Teaming Agreement.

---

[20] Curtis acknowledges in their opposition that their
fraudulent misrepresentation claim, as pleaded in the
counterclaim, fails to state a claim.  Opp. to MTD at 67-68.
Curtis's attempt to recast their fraudulent misrepresentation
claim essentially transforms the claim into a claim for
fraudulent inducement to contract.  See id. at 68.  The Court
therefore considers these two fraud-based claims in tandem.

A fraudulent inducement claim in Pennsylvania consists of the following elements: (1) a representation; (2) material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.  EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 275 (3d Cir. 2010) (citing Skurnowicz v. Lucci, 798 A.2d 788, 793 (Pa. Super. Ct. 2002)).  A negligent misrepresentation claim has similar elements, but the speaker need not know his words are untrue. See Bortz v. Noon, 729 A.2d 555, 561 (Pa. 1999).

Curtis has neither demonstrated that the representations about sonar experience were made falsely nor that they justifiably relied on the representations.  The counterclaims state that in May 2005, David Herbener sent CTL a contract proposal containing four allegedly false statements: (1) that KDH was "poised to be an industry leader in underwater sonar technology," (2) that KDH had a state of the art facility in Johnstown, PA, (3) that KDH has a number of "sonar related systems currently in development with various military customers," and that (4) KDH is a "complete systems company"

involved in the development of military electronic sensors, and command and control systems.[21]  Counterclaim ¶ 20.

Yet the only allegation as to the four statements' falsity is that Herbener admitted under oath that neither he nor KDH had ever done any work on sonar systems prior to coming into contact with Dr. Curtis.  Id. ¶ 22.  This admission, however, does not actually speak to the falsity of any of the four statements above.[22]  Curtis has also failed to demonstrate that they justifiably relied on these statements, many of which strike the Court as both vague and mere "puffery" rather than statements of fact.  See Bonnieview Homeowners Ass'n v. Woodmont Builders, LLC, 655 F. Supp. 2d 473, 516 (D.N.J. 2009) (dismissing fraudulent misrepresentation claim because statements were vague and puffery).

Similarly, Curtis has not demonstrated that the sales projections were made falsely.  Under Pennsylvania law, "promises to perform future acts are not misrepresentations unless the promise maker did not intend to fulfill the promise."  Azarchi-

---

[21] The counterclaims are once again unclear regarding which of the KDH Counterclaim Defendants Curtis means to refer to here.

[22] For example, despite not having yet done work on sonar systems, Herbener and KDHE could have had the resources and wherewithal to be "poised" to be an industry leader.  Similarly, they could have had "sonar-related" projects "in development" without having initiated work on any projects.  Lastly, Herbener's admission under oath has nothing to do with whether "KDH" had a state of the art facility, or whether "KDH" was a complete systems company, as represented.

Steinhauser v. Protective Life Ins. Co., 629 F. Supp. 2d 495, 501 (E.D. Pa. 2009) (citing Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Invs., 951 F.2d 1399, 1409 (3d Cir. 1991)).  Herbener merely provided predictions of future sales, and Curtis has not alleged that he did not intend to meet those goals.

Finally, the parol evidence rule bars consideration of the alleged misrepresentations regarding intent to jointly develop the T-3 and make best efforts to include CTL as a subcontractor.  Once a writing is determined to be the parties' entire contract, the parol evidence rule dictates that evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is inadmissible to explain or vary the terms of the contract.  Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436-37 (Pa. 2004).  Although fraud is generally an exception to the parol evidence rule, the Pennsylvania Supreme Court has limited the fraud exception to claims for fraud in the execution of a contract, and refused to apply the fraud exception to claims for fraud in the inducement.  Toy v. Metropolitan Life Ins. Co., 928 A.2d 186, 204-05 (Pa. 2007).  Under Pennsylvania law, therefore, courts may not consider prior representations regarding matters covered in an integrated written contract unless the representations were fraudulently omitted from the contract.

37

Dayhoff, Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1300 (3d Cir. 1996).

Here, the Teaming Agreement's integration clause specifies that the contract is the "complete agreement of the parties relating to the subject matter hereof."  Counterclaim Ex. D § 20.  The Teaming Agreement directly addresses the parties' intent to jointly develop the T-3 and make best efforts to use CTL as the subcontractor.  Furthermore, Curtis fails to allege fraud in the execution of a contract – in other words, that the counterclaim defendants fraudulently omitted agreed-upon terms from the Teaming Agreement.  Thus, under Pennsylvania law, the parol evidence rule bars consideration of the representations regarding intent to jointly develop the T-3 and make best efforts to subcontract with Curtis.

Therefore, the Court dismisses the claims for fraudulent inducement, fraudulent misrepresentation (as re-pleaded in Curtis's opposition), and negligent misrepresentation as to all counterclaim defendants for failure to state a claim.

> d.   Law of the Case: Unjust Enrichment (Count VII) & Conversion (Count XVII)

The Court's prior decision in this case bars Curtis's counterclaims for unjust enrichment and conversion.

Under Pennsylvania law, "the quasi-contractual doctrine of unjust enrichment is inapplicable when the relationship

38

between the parties is founded on a written agreement or express contract." Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987) (citation omitted). As stated above, the Court's December 2008 decision implicitly held that the Teaming Agreement was a valid, binding contract. Therefore, under the "law of the case" doctrine, Curtis cannot maintain their claim for unjust enrichment.

Similarly, the law of the case doctrine precludes Curtis's claim for conversion. Curtis alleges that the counterclaim defendants have acted to deprive CTL and Dr. Curtis of their property rights in the T-3 system. Counterclaim ¶ 189. However, the Court has already decided the issue of ownership of the T-3 system in favor of KDHE.

> e. Tortious Interference with Contract against the KDH Counterclaim Defendants (Count VIII) & Tortious Interference with Contract against Channel Technologies Group (Count X)

Curtis brings two claims for tortious inference with contract - the first against the KDH Counterclaim Defendants (Count VIII) for interfering with CTL's contract with Oceanscan, and the second against Channel Technologies Group (Count X) for interfering with CTL's Teaming Agreement with KDHE. The first claim against the KDH Counterclaim Defendants is under section 766A of the Restatement (Second) of Torts for interfering with CTL's own performance of an existing contract. The second claim

39

against Channel Technologies Group is a claim under section 766
of the Restatement for interfering with a third party, KDHE's
performance of an existing contract (the Teaming Agreement).  The
Court dismisses the first claim, but not the second.

The Court begins by briefly discussing the difference
between actions under sections 766 and 766A.  Section 766 of the
Restatement (Second) of Torts recognizes a cause of action where
the defendant interferes with a third person's performance of an
existing contract with the plaintiff.[23]  By contrast, section
766A addresses disruptions caused by an act directed at the
plaintiff: the defendant prevents the plaintiff's own
performance, or makes performance more expensive or burdensome.
See Windsor Securities, Inc. v. Hartford Life Ins. Co., 986 F.2d
655, 660 (3d Cir. 1993).  In short, "the sections focus on
different targets of interfering conduct."  Id.

Pennsylvania courts follow section 766 for tortious
interference claims.  Adler, Barish, Daniels, Levin & Creskoff v.
Epstein, 393 A.2d 1175, 1181-82 (Pa. 1978).  However,

_____

[23] Section 766 provides:
One who intentionally and improperly interferes with the
performance of a contract (except a contract to marry)
between another and a third person by inducing or otherwise
causing the third person not to perform the contract, is
subject to liability to the other for the pecuniary loss
resulting to the other from the failure of the third person
to perform the contract.

Restatement (Second) of Torts § 766 (1979) (emphasis added).

40

Pennsylvania courts have not adopted section 766A of the
Restatement.  Furthermore, the Third Circuit has put the
viability of a cause of action under section 766A into serious
doubt.

In Windsor Securities, the Third Circuit suggested -
without deciding - that the Pennsylvania Supreme Court is
unlikely to adopt section 766A.  986 F.2d at 659-60, 661-63.
Then, in Gemini Physical Therapy, the Third Circuit affirmed the
lower court's dismissal of a section 766A claim.  The court
reasoned that causing the performance of a contract to be more
costly for the plaintiff is "too speculative and subject to abuse
to provide a meaningful basis for a cause of action." Gemini
Phys. Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.,
40 F.3d 63, 66 (3d Cir. 1994).

Following Gemini Physical Therapy, some district courts
have found that section 766A claims are not cognizable under
Pennsylvania law.  See, e.g., Cottman Transmission Sys., LLC v.
Bence, No. 03-5467, 2004 WL 739907, at *3 (E.D. Pa. Apr. 5,
2004); Leopold Graphics, Inc. v. CIT Grp./Equip. Fin., Inc., No.
01-6028, 2002 WL 1397449, at *4 (E.D. Pa. June 26, 2002).  But at
least one court continued to follow pre-Gemini courts by
assuming, without deciding, that Pennsylvania would adopt section
766A.  That court held that the party failed to meet the elements
of a tortious interference claim.  See GE Capital Mortg. Servs.,

41

Inc. v. Pinnacle Mortg. Inv. Corp., 897 F. Supp. 854, 869 (E.D.
Pa. 1995).

The court in GE Capital cited Gemini Physical Therapy
as an example of a case that applied section 766A without
deciding whether Pennsylvania would eventually adopt it.  Id.
Although the Third Circuit did not explicitly state that it was
so holding, this Court interprets Gemini Physical Therapy as the
Third Circuit's prediction that the Pennsylvania Supreme Court
would not recognize an action under section 766A.  Because the
Pennsylvania Supreme Court has not ruled to the contrary, this
Court follows Gemini Physical Therapy, Cottman Transmission, and
Leopold Graphics in finding that Curtis has not stated a
cognizable claim under Pennsylvania law against the KDH
Counterclaim Defendants for interfering with CTL's own
performance of its contract with Oceanscan.[24]  The Court
therefore dismisses Count VIII for failure to state a claim.

_____

[24] Since Gemini Physical Therapy, the lower state courts
have not uniformly followed the Third Circuit.  Compare
Biofeedback Grp., Inc. v. State Farm Mut. Auto. Ins. Co., 31
Phila. Co. Rptr. 106, 111 (Pa. Ct. Com. Pl. 1996) (agreeing with
the Gemini rationale) with P.V.C. Realty ex rel. Zamias v. Weis
Markets, No. 1995-639, 2000 WL 33406981, at *16-17 (Pa. Ct. Com.
Pl. Dec. 19, 2000) ("It seems irrational to recognize a cause of
action for a party's conduct directed at a third party designed
to prevent that third party from performing a contract with
another and not recognize a similar cause of action for that
other party where the actor's conduct is instead directed at the
other to prevent them from performing.").

By contrast, the Court denies the motion to dismiss the tortious interference claim under section 766 against Channel Technologies Group.  As stated above, Pennsylvania recognizes tortious interference actions under section 766 of the Restatement.  Although the Court questions whether Channel Technologies Group has acted improperly in a manner other than the interference itself, the Court finds that Curtis has alleged sufficient facts for this claim to survive a motion to dismiss.

### f.   Commercial Disparagement (Count IX)

The publication of a disparaging statement concerning the business of another is actionable under Pennsylvania law where: (1) the statement is false; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity.  Pro Golf Mfg., Inc. v. Tribune Rev. Newspaper Co., 809 A.2d 243, 246 (Pa. 2002).  The counterclaim defendants argue that Curtis has failed to allege facts to satisfy the first and third elements.

Curtis alleges that David Herbener told Roll Call, a publication widely read by government procurement officials, that CTL "dragged [KDH] through a series of delays" and delayed

43

progress on the T-3 system.  Counterclaim ¶¶ 115-18, 153-56.  The
Court expresses no view on the truth or falsity of these
statements.  However, the Court finds that Curtis has failed to
allege pecuniary loss with the requisite specificity.

Under Pennsylvania law, a plaintiff claiming commercial
disparagement must plead damages with considerable specificity by
setting out "the names of customers lost and financial loss
resulting from the tort."  Bro-Tech Corp. v. Thermax, Inc., 651
F. Supp. 2d 378, 416 (E.D. Pa. 2009).  See also Swift Bros. v.
Swift & Sons, Inc., 921 F. Supp. 267, 276 (E.D. Pa. 1995) (citing
Cosgrove Studio & Camera Shop v. Pane, 21 Pa. D. & C.2d 89
(1960), rev'd on other grounds 182 A.2d 751 (Pa. 1962)); Pro
Golf, 809 A.2d at 248 (noting that a commercial disparagement
plaintiff must prove special damages).

Here, the only allegation that Curtis makes as to
damages is that "[p]ecuniary loss did in fact result to CTL and
Dr. Curtis."  Counterclaim ¶ 155.  Because this conclusory
allegation cannot satisfy Curtis's burden under Pennsylvania law,
the Court dismisses this count as to all counterclaim defendants
for failure to state a claim.

g.   Unjust Enrichment against Channel
     Technologies Group (Count XI)

The Court denies the motion to dismiss the unjust
enrichment claim against Channel Technologies Group without

prejudice because the claim presents questions more suitably decided in a developed factual context.  The counterclaim defendants may raise their arguments for dismissal again at the summary judgment stage.

> h.   Lanham Act (Count XII) & Unfair Competition (Count XVI)

Curtis bases their Lanham Act claim against all the counterclaim defendants on a single website publication by Sonatech.  Counterclaim Ex. L.  As a preliminary matter, the Lanham Act provides for liability only for persons who make the false or misleading statements.  See 15 U.S.C. § 1125(a)(1).  In other words, only Channel Technologies Group, of which Sonatech is a division, has potential Lanham Act liability.

Furthermore, Curtis has not demonstrated that Sonatech's statements on the website are literally false or that consumers would actually be misled or deceived.  See Sandoz Pharms. Corp. v. Richardson-Vicks, Inc., 902 F.2d 222, 228-29 (3d Cir. 1990) (noting that where advertisements are not literally false, Lanham Act plaintiffs must demonstrate actual deception of consumers); Accenture Global Servs. GMBH v. Guidewire Software Inc., 581 F. Supp. 2d 654, 667 (D. Del. 2008) (dismissing Lanham Act claim for failing to allege that customers actually were misled by allegedly misleading statements).

Here, the Sonatech website states that Sonatech and KDHD conducted a joint demonstration of the T-3 system, and that the two companies formed a partnership regarding the T-3 system. Counterclaim Ex. L.  The website does not state that the two companies were exclusively responsible for the T-3 system.

Curtis argues that customers may be misled by the website into thinking Sonatech and KDHD were the sole creators and designers of the T-3.  However, because Curtis has not alleged that customers were <u>actually</u> misled into thinking Sonatech and KDHD had exclusively developed the T-3 system, the Court dismisses the Lanham Act against all counterclaim defendants for failure to state a claim.  See <u>Sandoz</u>, 902 F.2d at 928-29.

Under Pennsylvania law, the elements necessary to prove unfair competition through false advertising parallel those elements needed to show a Lanham Act violation, absent the requirement for goods to travel in interstate commerce.[25]

---

[25] Traditionally, Pennsylvania courts have narrowly construed a common law action for unfair competition to "instances of trademark infringement or attempts to imitate a plaintiff's products or services." <u>Perma-Liner Indus., Inc. v. U.S. Sewer & Drain, Inc.</u>, 630 F. Supp. 2d 516, 526 (E.D. Pa. 2008).  Some courts in this district have recognized that common law unfair competition is coextensive with the definition set forth in the Restatement (Third) of Unfair Competition.  <u>See Giordano v. Claudio</u>, 714 F. Supp. 2d 508, 521-22 (E.D. Pa. 2010 (collecting cases).  The Court finds that Curtis has failed to state a cognizable claim even under the slightly expanded definition of unfair competition in the Restatement.

See <u>R.J. Ants, Inc. v. Marinelli Enter., LLC</u>, 771 F. Supp. 2d. 475, 489 (E.D. Pa. 2011); <u>Liko AB v. Rise Lifts, Inc.</u>, 625 F. Supp. 2d 250, 255 (E.D. Pa. 2008); <u>Pa. State Univ. v. Univ. Orthopedics, Ltd.</u>, 706 A.2d 863, 870-71 (Pa. Super. Ct. 1998). Therefore, the Court's analysis and disposition as to the Lanham Act apply equally to the common law unfair competition claim.

> ### i.   Pennsylvania Uniform Trade Secrets Act Violation (Count XV)

The Court denies the motion to dismiss the Pennsylvania Uniform Trade Secrets Act claim against the remaining counterclaim defendants without prejudice because the claim presents questions more suitably decided in a developed factual context.  The counterclaim defendants may raise their arguments for dismissal again at the summary judgment stage.

> ### j.   Conspiracy (Count XVIII)

Curtis alleges that the KDH Counterclaim Defendants and Sonatech "combined or agreed with intent" to commit various unlawful acts.  Counterclaim ¶ 46.

Although the notice pleading standard under Rule 8 is a liberal one,[26] a claim for civil conspiracy must include more

---

[26] Although state law forms the substantive basis of the conspiracy claim, the pleading standard is governed by federal law.  <u>Adams v. Teamsters Local 115</u>, 214 F. App'x 167, 176 (3d Cir. 2007).

than "conclusory allegations of concerted action" and contain "at least some facts which could, if proven, permit a reasonable inference of a conspiracy to be drawn." Durham v. City and County of Erie, 171 F. App'x 412, 415 (3d Cir. 2006) (citing Abbott v. Latshaw, 164 F.3d 141, 148 (3d Cir. 1998) and Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005)); see also Loftus v. Se. Penn. Transp. Auth., 843 F. Supp. 981, 987 (E.D. Pa. 1994)). Pennsylvania recognizes an action for conspiring to interfere with a contractual relationship. See Caskie v. Phila. Rapid Transit Co., 5 A.2d 368 (Pa. 1939).

Here, Curtis has alleged the existence of an agreement and pointed to discussions between KDHE and Sonatech which could plausibly support an inference of a conspiracy to "airbrush" CTL out of the Teaming Agreement. See Counterclaim ¶¶ 72, 103-116; id. Ex. K. However, Curtis has not made any allegations plausibly linking either KDHD or David Herbener to the alleged conspiracy, let alone allegations sufficient to put the parties on notice of their allegedly conspiratorial conduct. All Curtis alleges with respect to Herbener is that he testified regarding the award of the subcontract to Sonatech, and that he told a newspaper about delays with Curtis and the award of the subcontract to Sonatech. Counterclaim ¶¶ 104, 111 116. These allegations do not give rise to an inference of a conspiracy.

48

As such, the Court grants the motion to dismiss Count XVIII as to KDHD and David Herbener and denies the motion as to KDHE and Channel Technologies Group.

           k.    <u>Failure to Include Flow-Down Clauses (Count XIX)</u>

Count XIX attempts to state a novel claim, sounding alternatively in contract or tort, based on KDHE's failure to include "flow down" clauses to protect Curtis's intellectual property rights, as required by certain Defense Federal Application Regulations ("DFARs").  Counterclaim ¶ 198-203.  This claim does not arise under the federal regulations themselves. <u>See</u> Opp. to MTD at 77 (describing the claim).

Curtis cites no case law to support their claim for failure to include "flow down" clauses under the DFARs and the Court finds none.  The Court therefore dismisses Count XIX as to all counterclaim defendants for failure to state a cognizable claim under state law.

An appropriate order follows separately.